UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARILYN AZUZ, individually and on behalf of
all others similarly situated,

   Plaintiff,

vs.

ACCUCOM CORPORATION d/b/a
INFOTRACER ,

   Defendant
_____/

Case No. 1:21-cv-01182

Judge Steven C. Seeger

Magistrate Judge Cummings

### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
### PURSUANT TO RULE 12(B)(3)

  Defendant, ACCUCOM CORPORATION d/b/a INFOTRACER ("Infotracer"), by and through its attorneys and for its Memorandum in Support of its Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure states as follows:

### I. INTRODUCTION

  As set forth in Defendant's Memorandum in Support of its Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(2), this case concerns Infotracer's website www.infotracer.com in which a user may run a free public record search preview. A user may run the free preview by entering certain information such as "Name," "Phone," "Email," "Username" and clicking "Search." Prior to clicking "Search" the user is notified "Conducting a search on InfoTracer.com is subject to our Terms of Service and Privacy Notice." https://infotracer.com/. By accessing, browsing or otherwise using its site, internet users agree to be bound by Infotracer's "Terms of Service" which include an arbitration provision.

  Plaintiff contends her information was accessed in a free preview on Infotracer's site. She includes a screen shot of that preview at paragraph 5 of her Complaint. (Compl., ¶¶5, 23-25). The

screen shot could not be generated without affirmatively clicking on the "Search" button. (Declaration of Jessica Hanson attached hereto as Exhibit A).

Plaintiff contends that the purpose of the free preview is to "entice users to purchase Defendant's services" and that she "has not been compensated by [Defendant] in any way for its use of her identity." (Compl., ¶¶7,29). She contends that Infotracer violated the Illinois Right to Publicity Act, 765 ILCS 1075/1 by allegedly advertising or promoting its products without written consent. (Compl., ¶39). By using its site to access a free preview, Plaintiff agreed to the Terms of Service ("Terms") and agreed to arbitrate in Boston, Massachusetts any dispute concerning Accucom Corporation, including any InfoTracer services. Because the Terms contain a forum selection clause requiring arbitration in Boston, Massachusetts, in the event that this Court does not dismiss Plaintiff's Complaint pursuant to Rule 12(b)(2), this Court should alternatively dismiss Plaintiff's Complaint pursuant to Rule 12(b)(3).

## II. BACKGROUND

### A. Infotracer's services

Infotracer owns and operates the website www.infotracer.com. It houses over 3.5 billion public records and offers access to public records. (Ex. A, ¶3). Infotracer's website is governed by its Terms of Service ("Terms"). By accessing, browsing or otherwise using its site, internet users agree to be bound by Infotracer's Terms. (Ex. A, ¶4). Infotracer offers users a free preview of its service. A user may run a free public record search preview by entering certain information such as "Name," "Phone," "Email," and "Username" and clicking "Search." Prior to clicking "Search" the user is notified "Conducting a search on InfoTracer.com is subject to our Terms of Service and Privacy Notice." https://infotracer.com/. (Ex. A, ¶5). An exemplar is below:



The Terms are also accessible via a hyperlink under the Menu bar on the bottom of the home screen shown in the image below:



(Ex. A, ¶6).

A disclaimer is displayed on the bottom of the home screen as depicted below:



A hyperlink to the Terms is also available on the bottom of every page of infotracer.com. (Ex. A, ¶8).

### B. Terms of Service

A user who clicks on the hyperlink will be directed to the following Terms, the first section of which is reproduced below:

**Terms of Service**

**Effective Date**: November 03, 2020

**PLEASE READ THIS AGREEMENT CAREFULLY. IT CONTAINS IMPORTANT INFORMATION ABOUT YOUR RIGHTS AND OBLIGATIONS.**

Welcome to InfoTracer, a public records search service provided by Accucom Corporation ("we", "us"). The InfoTracer website (available at **https://infotracer.com** including all content under the "infotracer.com" domain name) is owned and operated by us, and referred to herein as the "website" or the "Site." We provide the website and the associated products, services, data, information, updates and materials (altogether, the "services"), subject to your agreement to and compliance with the terms and conditions set forth in this document and its incorporated terms (the "Terms").

By accessing, browsing, or otherwise using the Sites, you agree to be legally bound by these Terms of Use. **PLEASE READ THESE TERMS OF USE CAREFULLY. YOUR USE OF THE SITE CONSTITUTES YOUR ACCEPTANCE OF THESE TERMS OF USE. DO NOT USE THE SITE IF YOU ARE UNWILLING OR UNABLE TO BE BOUND BY THE TERMS OF SERVICE.**

If you are accepting this Agreement on behalf of a legal entity other than yourself as an individual, including a business or a government, you represent and warrant that you have

full legal authority to bind such entity to this Agreement. You cannot purchase InfoTracer services until you have indicated your acceptance of these Terms.

These Terms of Use apply only to your use of the Site, and was last updated as of November 03, 2020. We expressly reserve the right to revise these Terms of Use at any time and such revision shall be posted here and accessible via this link: **https://infotracer.com/terms**. Any revision and/or addition to these Terms of Use shall become effective and binding on you when you continue to use the Site on or after the effective date of such revision and/or addition.

(Ex. 1 to Ex. A).

Once the user enters information in the search engine and clicks on the large red "Search" box, the following Notice is triggered and displayed on the screen:



(Ex. A, ¶10). A user cannot access the free preview without clicking "I AGREE." (Ex. A, ¶11).

C. **Arbitration Provision**

The Terms contain the following Arbitration Provision:

**Arbitration:**

Any dispute concerning Accucom Corporation, any InfoTracer services, Information, or these Terms will be settled by binding arbitration in Boston, Massachusetts, in accordance with the Commercial Arbitration Rules of the American Arbitration Association. Judgment upon the award made by the arbitrator(s) may be entered in any court having jurisdiction thereof. You acknowledge that agreeing to such binding arbitration constitutes a waiver of your right to a jury trial, and that this agreement to arbitrate is voluntary and not legally required. If any arbitration or legal action or similar proceeding is instituted by either party concerning the payment of our fees or costs advanced hereunder, the prevailing party will be entitled to collect its reasonable attorneys' fees, in addition to any other relief the party may obtain. (Ex. A, ¶12).

### III. <u>ARGUMENT</u>

B. **Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(3).**

Section 4 of the Federal Arbitration Act ("FAA") provides in part:

The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, *shall be within the district in which the petition for an order directing such arbitration is filed.* 9 U.S.C. § 4 (emphasis added)

The Seventh Circuit has interpreted this provision to mean that "where the arbitration agreement contains a forum selection clause, only the district court in that forum can issue a §4 order compelling arbitration." *Merrill Lynch, Pierce, Fenner & Smith v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995). Accordingly "when a court is presented with a motion to compel arbitration in a different district, the proper action is to dismiss the complaint for improper venue under Rule 12(b)(3)." *Bahoor v. Varonis Sys., Inc.*, 152 F. Supp. 3d 1091, 1096 (N.D.Ill. Dec. 28, 2015); *see also Nandorf, Inc. v. Applied Underwriters Captive Risk Assur. Co.,* 410 F.Supp.3d 882, 887

(N.D.Ill. Sept. 23, 2019). Whether brought under §4 of the FAA or Rule 12(b)(3), however, the inquiry is the same. Namely, "did the plaintiff[] agree to arbitrate the claims asserted in [her] complaint?" *Ferenc v. Brenner*, 927 F. Supp. 2d 537, 542 (N.D.Ill. Feb. 21, 2013). As explained below, she did.

1. **The Federal Arbitration Act applies to the Arbitration Provision.**

The Arbitration Provision is governed by the FAA which mandates that binding arbitration agreements "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2. The FAA is extremely broad and applies to any transaction directly or indirectly affecting interstate commerce. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995).

Plaintiff alleges that she is a citizen of Illinois who resides in Chicago, Illinois. (Compl., ¶18). She alleges that Defendant Accucom Corporation is a Delaware corporation with its principal place of business located in Boston, Massachusetts. (Compl., ¶19). Plaintiff contends that her information was accessed in the Northern District of Illinois. (Compl., ¶22). The use of the Infotracer site is a matter affecting interstate commerce. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-56 (2003)(interstate commerce is satisfied "if in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control.'").

The Supreme Court routinely recognizes that the FAA embodies a "national policy favoring arbitration," *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, (2006); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011), and therefore, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, (1983).

Simply put, the "overarching purpose of the FAA, evidenced in the text of §§ 2, 3 and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Concepcion*, 563 U.S. at 339; *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S.Ct. 524, 528 (2019) ("Under the Act, arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms."). Section 4 of the FAA "requires courts to compel arbitration 'in accordance with the terms of the agreement' upon the motion of either party to the agreement..." *Concepcion*, 563 U.S. at 344. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration..." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

Under the FAA, arbitration must be compelled where: (1) a valid, enforceable agreement to arbitrate exists and (2) the claims at issue fall within the scope of that agreement. *See Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226 (1987). An arbitration agreement governed by the FAA, like the Arbitration Provision here, is presumed to be valid and enforceable. *See Mitsubishi Motors Corp. v. Solver Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-27 (1985). The party resisting arbitration bears the heavy burden of demonstrating that the arbitration agreement is invalid or that the claims at issue do not fall within the purview of the arbitration agreement. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91–92 (2000).

**2. The Arbitrator should decide the validity and scope of the Arbitration Provision.**

Any question as to gateway arbitrability issues such as the existence, scope or validity of the Arbitration Provision must be determined by the arbitrator because the Commercial Arbitration Rules of the American Arbitration Association ("AAA") were incorporated by reference in the

Terms. *See Ali v. Vehi-Ship*, 2017 U.S. Dist. LEXIS 19445, 2017 WL 5890876 (N.D.Ill. Nov. 27, 2017).

The Arbitration Provision provides:

Any dispute concerning Accucom Corporation, any InfoTracer services, Information, or these Terms will be settled by binding arbitration in Boston, Massachusetts, in accordance with the Commercial Arbitration Rules of the American Arbitration Association. (Ex. 1 to Ex. A).

Under the Commercial Arbitration Rules of the AAA, the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Rule 7(a) *available at* https://adr.org/commercial.

Because the Terms incorporate the AAA Rules, arbitrability issues are delegated to the arbitrator. *In re. Dealer Mgmt Sys. Antitrust Litig.*, 2020 U.S.Dist. LEXIS 29052, *33, 2020 WL 832365 (N.D.Ill. Feb. 20, 2020)(collecting cases); *see also Crooms v. Southwest Airlines Co.*, 459 F. Supp. 3d 1041, 1055 (N.D.Ill. May 12, 2020)( "Several Circuit Courts have ruled that incorporating AAA Rules constitutes 'clear and unmistakable evidence' that the parties agreed to arbitrate the question of arbitrability.").

However, even in the event the Court determines that it, rather than the arbitrator, must evaluate the enforceability of the Arbitration Provision and whether the claims fall within the scope of that provision, the Court must conclude that arbitration, and not district court, is the proper forum.

### 3. Plaintiff entered into a valid and enforceable Arbitration Agreement.

The Court must look to ordinary contract principles in determining whether a party is bound by the terms of a written arbitration agreement. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter

9
1040298\307939597.v1

(including arbitrability), courts generally should apply ordinary state-law principles that govern the formation of contracts."). While the FAA governs the enforceability of the Arbitration Provision, state law governs the determination of whether a valid agreement to arbitrate exists. *Kaplan*, 514 U.S. at 944.

The Terms contain a choice of law provision stating that they are to be "governed by and construed in accordance with the laws of the Commonwealth of Massachusetts, without reference to its conflict of laws principles." (Ex. A, ¶12). Regardless of whether Massachusetts or Illinois law applies to the contract formation, however, a valid and enforceable agreement exists. Because there is no conflict between Illinois and Massachusetts as to the issues raised in this motion, the court need not engage in a conflict of laws analysis. *Gorny v. Wayfair Inc.*, 2019 U.S. Dist. LEXIS 95619, *13, 2019 WL 2409595 (N.D.Ill. June 7, 2019)("Neither party contends, however, that there is any substantive difference between the governing standards in Illinois and Massachusetts, so the Court need not perform a choice-of-law analysis and will apply the law of Illinois, the forum state.")

Under both Massachusetts and Illinois law, where a website user is provided with a conspicuous hyperlink to terms of service including an arbitration clause, his or her use of the site creates a binding agreement to arbitrate regardless of whether the user reads the terms of use at the time he or she accesses the site. *See Emmanuel v. Handy Techs., Inc.*, 2021 U.S.App. LEXIS 8467 (1st Dist. Mar. 22, 2021)("for an online contract to have been formed under Massachusetts law the user of the online interface must have been given 'reasonable notice of the terms' of the agreement and must have made a 'reasonable manifestation of assent to those terms,'" citing *Kauders v. Uber Technologies, Inc.*, 486 Mass. 557 (Mass 2021)); *Johnson v. Uber Techs., Inc.,* 2018 U.S.Dist. LEXIS 161155, 2018 WL 403938 (N.D.Ill. Sept. 20, 2018)("Illinois law requires that a consumer

be provided reasonable notice of all the terms and conditions of an agreement as well as reasonable notice that, by clicking a button, the consumer is assenting to the agreement."); *Friends for Health: Supporting the N. Shore Health Ctr. v. Paypal, Inc.*, 2018 U.S. Dist. LEXIS 98187, *13, 2018 WL 2933608 (N.D.Ill. June 12, 2018)(the court found reasonable notice where terms of the user agreement, including arbitration provision were available either through a scroll box or through a hyperlink).

In *Johnson*, the court enforced an online arbitration agreement where the app plaintiff used to create his Uber account included the statement: "[b]y creating an Uber account, you agree to the Terms of Service & Privacy Policy." *Id*. at *10. The court found that the statement appeared in an easy-to-read font on an uncluttered screen. *Id.* A visible hyperlink when clicked, brought the user to a screen displaying Uber's Terms of Service. As a result, the manner in which the statement and the terms were presented placed a reasonable person on notice that there were terms incorporated with creating an account, and by creating an account he/she was agreeing to those terms. *Id*. at *10-11.

Similarly, in *Gorny v. Wayfair Inc.*, 2019 U.S. Dist. LEXIS 95619, 2019 WL 2409595 (N.D.Ill. June 7, 2019), the court concluded that the web pages presented to plaintiff adequately communicated all the terms and conditions of the agreement and that the circumstances supported the inference that he received reasonable notice of the relevant terms including the arbitration clause. The plaintiff accessed the site (Wayfair.com) repeatedly and made purchases where immediately below the button "Place Your Order," the message "By placing an order, you are agreeing to our Privacy Policy and Terms of Use" was displayed. *Id*. at *16-17. The court thus rejected plaintiff's argument that the arbitration agreement was not enforceable because he never "saw" the terms of use and never signed the arbitration agreement, concluding, "the web pages

11

presented to Gorny adequately communicated all the terms and conditions of the agreement and that the circumstances support the inference that he received reasonable notice of those terms." *Id*. at *16.

In this case, Plaintiff cannot challenge that she used Infotracer's website to access a free preview of information pertaining to herself because that search (an exemplar of which is embedded in her Complaint) forms the basis for her claims. (Compl., ¶5); *see Soo Line R.R. v. St. Louis S.W. Ry.*, 125 F.3d 481, 483 (7th Cir. 1997)("A party is bound by what it states in its pleadings."). Plaintiff alleges that her injury "resulted from Defendant's purposefully directed activities in this district." (Compl., ¶21). She claims "Plaintiff lives in this District which is also the primary location of her injury." (Compl., ¶22). The image Plaintiff relies on as proof of her injury could not have been generated unless she entered information in the search engine, clicked on the large red "Search" box and also clicked "I AGREE" to the Notice that popped up on the screen (Ex. A, ¶¶10-11). She thus used Defendant's site in order to generate the free preview incorporated into her Complaint. Prior to running the search she was provided reasonable notice of the Terms including the Arbitration Provision because she was advised, "Conducting a search on InfoTracer.com is subject to our Terms of Service and Privacy Notice." https://infotracer.com/. The preview further references infotracer's "Terms of Use" in the Unlimited Search Access box. (Compl., ¶5). Infotracer's Terms are available through a hyperlink on the bottom of every page of infotracer.com. (Ex. A,¶8). Under the totality of the circumstances Plaintiff was placed on reasonable notice that by engaging in the search she was agreeing to the Terms. *See Miracle-Pond v. Shutterfly, Inc.,* 2020 U.S. Dist. LEXIS 86083, *12, 2020 WL 2513099 (N.D.Ill. May 15, 2020)(Because Shutterfly's "app contained a clear and conspicuous statement that ... a user agreed to the Terms of Service and Privacy Policy" by clicking a link or pressing a button, a reasonable

user who completed that process would understand that he/she was manifesting assent to the Terms); *Hubbert v. Dell Corp.*, 835 N.E.2d. 113 (Ill. App. 2005)(enforcing arbitration where "Terms and Conditions of Sale" were available via a blue hyperlink on defendant's web pages when plaintiffs were completing their online purchases); *Wickberg v. Lyft, Inc*., 356 F.Supp.3d 179, 184 (D. Mass. Dec. 19, 2018)(finding plaintiff "entered into a valid arbitration agreement by affirmatively assenting to reasonably communicated terms" where plaintiff clicked a box agreeing to the terms of service during the registration process and the phrase "Lyft's terms of service" were highlighted in pink and hyperlinked to the written terms).

**4.     Plaintiff's claims fall within the scope of the Arbitration Provision.**

While as set forth above, whether Plaintiff's claims fall within the scope of the arbitration provision is a matter for the arbitrator to decide, the claims plainly fall within the broad Arbitration Provision. Because the FAA reflects a "liberal federal policy favoring arbitration agreements," "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." The Arbitration Provision provides that "[a]ny dispute concerning Accucom Corporation, any InfoTracer services, Information, or these Terms will be settled by binding arbitration in Boston, Massachusetts…" (Ex. A, ¶12).  Claims must be arbitrated "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," and "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Techs*., Inc., 475 U.S. at 650.  Any doubts about whether a claim is arbitrable "should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25.

There is no question that Plaintiff's Illinois Right of Publicity claim premised on the alleged use of her "name, age, city of domicile, and the identity of her relatives in advertisements on the Accucom website" (Compl., ¶23) is a "dispute concerning Accucom Corporation."

13

Accordingly, Plaintiff's claims fall within the scope of the Arbitration Provision.

## IV. **CONCLUSION**

Plaintiff agreed to the Terms including the Arbitration Provision by using InfoTracer's site to obtain the free preview she relies on as the basis for her Illinois Right to Publicity Act, 765 ILCS 1075/1 claims. Any question as to the existence, scope or validity of the Arbitration Provision is delegated to the arbitrator in accordance with the AAA Rules. As the arbitration is to take place in Boston, Massachusetts, this Court should dismiss this Complaint as having been filed in the improper venue pursuant to Rule 12(b)(3).

WHEREFORE ACCUCOM CORPORATION d/b/a INFOTRACER respectfully requests that this Court dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(3) and for such further relief as this Court deems equitable and just.

|  | *s/ Louis J. Manetti, Jr.* |
|---|---|
| David M. Schultz | |
| John Ryan | One of the attorneys for Defendant |
| Louis J. Manetti, Jr. | |
| Hinshaw & Culbertson LLP | |
| 151 North Franklin St., Suite 2500 | |
| Chicago, IL 60606 | |
| Telephone: 312-704-3000 | |
| dschultz@hinshawlaw.com | |
| jryan@hinshawlaw.com | |
| lmanetti@hinshawlaw.com | |

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 5, 2021, a copy of the forgoing Defendant's Memorandum in Support of Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(3) was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                        By:  /s/Louis J. Manetti, Jr.
                                                 Hinshaw & Culbertson LLP
                                                 151 North Franklin St., Suite 2500
                                                 Chicago, IL 60606
                                                 Phone No.: 312-704-3000
                                                 Fax No. 312-704-3001