IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARILYN AZUZ, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>ACCUCOM CORPORATION d/b/a INFOTRACER ,<br><br>    Defendant | Case No. 1:21-cv-01182<br><br>Judge Steven C. Seeger<br><br>Magistrate Judge Cummings |

### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

Defendant, ACCUCOM CORPORATION d/b/a INFOTRACER ("Infotracer" or "Defendant"), by and through its attorneys and for its Memorandum in Support of its Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure states as follows:

### INTRODUCTION

Defendant has moved to dismiss Plaintiff's Complaint for failure to sufficiently plead personal jurisdiction over Infotracer (Rule 12(b)(2)) and also because the lawsuit has improperly been filed in this Court rather than in arbitration in Boston, Massachusetts (Rule 12(b)(3)). Defendant brings this Motion in the alternative on the basis that Plaintiff fails to plead a claim under the Illinois Right to Publicity Act ("IRPA") because she fails to plausibly allege that its free preview screens identify Plaintiff and were used for a commercial purpose. Second, Infotracer's online information system which houses public records is immune from liability under the Communications Decency Act, 47 U.S.C. § 230(c)(l). Finally, Infotracer's free previews contain

public records information and as such are subject to First Amendment protection as they qualify as noncommercial speech.

## ALLEGATIONS IN COMPLAINT

Infotracer owns and operates the website www.infotracer.com. Plaintiff alleges that it sells background reports on people to the general public through its website. (Compl., ¶¶1-2). A user may enter the first and last name of an individual via the search bar on the homepage which generates a listing of search results corresponding to a person Defendant has located who matches the name input by the user. (Compl., ¶4). The search results generate a limited free preview which Plaintiff contends "provides enough information to identify an individual" and "includes the searched individual's name (including middle initials), age, current city and state of residence, the searched individual's relatives, and other identifying information." (Compl., ¶¶5-6).[1] Plaintiff characterizes the free preview as an "advertisement" "to advertise and/or actually sell Defendant's products and services." (Compl., ¶23).

Plaintiff contends that the purpose of the free preview is to "entice users to purchase Defendant's services" including "Arrest Records," "Unlimited Lookup Pass" and "Bankruptcy Records." (Compl., ¶7). She alleges that Defendant "uses these free previews to advertise its monthly subscription services whereby a user can access and retrieve reports on any individual in its database." (Compl., ¶8). Plaintiff claims that in order to view a report or other background history "a user needs to purchase Defendant's services" whereby clicking "Open Report" or "View Report" "leads users to a pay screen which presents them with an option to pay for Accucom's monthly subscription services." (Compl., ¶9). She contends that Defendant used her name and likeness (as well as that of putative class members) "for the purpose of advertising or promoting

---

[1] Embedded in the Complaint is the screen shot of the free preview for "Marilyn Azuz."

its products without written consent" in violation of the Illinois Right to Publicity Act, ("IRPA"), 765 ILCS 1075/1, *et. seq*.

## ARGUMENT

**A.  Plaintiff fails to adequately plead an IRPA violation.**

The statute provides:

(a) A person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person or persons specified in Section 20 of this Act [765 ILCS 1075/20] or their authorized representative.

765 ILCS 1075/30(a).

Plaintiff, however, fails to establish that (1) Infotracer disclosed the "free preview" of her alleged identifying information to anyone, (2) that Infotracer "identified" her as defined in the Act, and (3) that her identity was used for a commercial purpose.

**1.  Plaintiff does not allege that anyone accessed the free preview.**

In order for the IRPA to apply, an individual's identity must be "used" for a "commercial purpose." The Act defines "commercial purpose" as "*the public use or holding out* of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." 765 ILCS 1075/5. (emphasis added).

Plaintiff, however, does not allege that anyone actually searched her name on Infotracer's site. Moreover, Infotracer does not use her or anyone's identity to sell its product(s). Only someone specifically looking for "Marilyn Azuz" would come across her information which is a public record, and therefore accessible. In other words, Infotracer is not using her name to attract

3

anyone, but rather is delivering search results, just like any search engine would do with any word, phrase or name used.

### 2. Infotracer's free preview does not identify her within the meaning of the IRPA.

Plaintiff vaguely contends that "it is reasonable for others to identify her" because Infotracer's free preview "include[s] accurate details about her." (Compl., ¶24). To support this claim she alleges "[u]pon accessing Accucom's website, the public-at-large is free to enter the first and last name of a particular individual via a search bar on the homepage" which generates a "listing of search results" and that "[e]ach search result corresponds to an actual person." (Compl., ¶¶3,4). She claims that the "listing of search results" includes the "searched individual's name (including middle initials), age, current city and state of residence, the searched individual's relatives, and other identifying information." (Compl., ¶5).

Plaintiff, however, concedes that the free preview generates a "listing of search results." In other words, the listing returns possible results for people with the same name. *See Dobrowolski v. Intelius, Inc.*, 2018 U.S. Dist. LEXIS 240434, *10, 2018 WL 11185289 (N.D.Ill. May 21, 2018)(dismissing IRPA claim and stating that where multiple people with the same name were listed in search results, viewing the website's search results "makes it no more or less likely that the ads identify plaintiffs, as opposed to another individual with the same name.").

### 3. Plaintiff fails to allege that her identity was used for a commercial purpose.

Plaintiff's Complaint does not establish that her identity was used by Infotracer for a commercial purpose. On the contrary, Plaintiff complains of a free preview which is part of the product that is ultimately for sale. As the *Dobrowolski* court noted:

> The use of plaintiffs' names on the marketing page does not violate IRPA either. Though plaintiffs are identified by the additional personal details on the marketing page, their identities are not being used for commercial purposes. The marketing

4

page lists defendants' reports that are available for purchase, and for each listing there is a preview of the information in the underlying report. *The plaintiffs' identities are not used to promote a separate product—they are used because plaintiffs' identities are part of the product offered for sale.* And this is not a commercial purpose as defined by the statute. *Id.* at *11 (emphasis added).

As in *Dobrowolski*, because the free preview is part of the report which is offered for sale and not to entice the purchase of some other product, Plaintiff fails to allege that her identity was used for a commercial purpose. *See Thompson v. Getty Images (US), Inc.*, 2013 WL 3321612 (N.D.Ill. July 1, 2013)("The statute's commercial purpose requirement does not prohibit the mere sale of someone's photograph. Rather, the IRPA prohibits the use of an individual's image to promote or entice the purchase of some other product than the photograph itself."). Indeed, an individual who runs the free preview cannot access the report without paying for it. *See* Compl., ¶9 ("In order for a user to view a person's reports or other background histories generated by the Defendant, a user needs to purchase Defendant's services."). In addition such individual cannot generate the free preview without first knowingly searching by a particular name.

Infotracer compiles 3.5 billion public records on its site. As in the case of a newspaper or yellow pages directory, the free preview of Infotracer's public records database falls within an exemption "for non-commercial purposes, including any news, public affairs, or sports broadcast or account, or any political campaign." 765 ILCS 1075/35; *Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384, 1388 (N.D.Ill. 2016)(noting that a newspaper or yellow pages directory was exempt from the IRPA even if such newspaper or directory generated revenue from an advertisement placed next to a name); *Nieman v. Versuslaw, Inc.*, 2012 U.S. Dist. LEXIS 109069, *1 (C.D.Ill. Aug. 2, 2012)(use of Plaintiff's name as link to Plaintiff's prior litigation was not commercial noting that the prior litigation was a matter of public record and public interest); *affirmed by Nieman v. Versuslaw, Inc.*, 512 Fed.Appx. 635 (7th Cir. 2013).

**B. Defendant is immune from liability under Section 230 of the Communications Decency Act.**

The Communications Decency Act ("CDA") provides:

No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

47 U.S.C. § 230(c)(1).

The Act preempts inconsistent state law. 47 U.S.C. §230(e). "[A]n online information system must not 'be treated as the publisher or speaker of any information provided by' someone else." *Chi. Lawyers' Comm. for Civ. Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008). Accordingly, the CDA bars claims based on content published by an interactive computer service that was provided by another information content provider. *Id.* (barring claim against craigslist for discriminatory housing advertisements that its users posted on its website); *Great N. Ins. Co. v. Amazon.com, Inc.*, 2021 U.S. Dist. LEXIS 43834, *17, 2021 WL 872949 (N.D.Ill Mar. 9, 2021)(barring claim against Amazon.com arising from description of the Paradise hoverboard where the description was provided by another information content provider).

An "interactive computer service" is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230. There is no question that Infotracer meets this definition as Plaintiff alleges that it operates a website that the "public-at large" is free to access by entering the first and last name of a particular individual on the homepage. (Compl., ¶¶3-4). In addition Defendant does not create the content on its website- rather it obtains these public records from third parties and does not alter the content. *See Callahan v. Ancestry.com Inc.*, 2021 U.S. Dist. LEXIS 37811, *14, 2021 WL 783524 (N.D.Cal.

6

Mar. 1, 2021)("Ancestry is an interactive-computer service. It did not create the underlying yearbook records and instead obtained them from third parties. It thus is immune from liability for the third-party content.").

Plaintiff acknowledges that the content on Infotracer's website comes from third parties and includes public records such as "Arrest Records" and "Bankruptcy Records." (Compl., ¶7). Indeed the screenshot depicted at paragraph 5 of the Complaint lists the type of information included in the report, if available, such as "arrests & warrants," "police records," "DUI & DWIs," "driving violations," "felonies," "misdemeanors," "convictions," etc. While Plaintiff contends that Defendant "compiles and generates" the content on its website, the allegations establish nothing more than that that Defendant is acting in an editorial function, *See Callahan*, 2021 U.S. Dist. LEXIS 37811 at *16-17, 2021 WL 783524 ("Instead of creating content, Ancestry — by taking information and photos from the donated yearbooks and republishing them on its website in an altered format — engaged in 'a publisher's traditional editorial functions [that] [] do not transform an individual into a content provider within the meaning of § 230.")(citations omitted). Plaintiff does not and cannot allege that Infotracer has created or developed the content at issue.

C.  **Plaintiff's claims are barred by the First Amendment.**

As set forth above, the public records information on Infotracer's site is noncommercial in nature. *See Nieman v. Versuslaw, Inc.*, 2012 U.S. Dist. LEXIS 109066, *17, 2012 WL 3201935 (C.D.Ill. June 13, 2012)("providing online access to judicial public records implicates First Amendment privileges"). "With respect to noncommercial speech, this Court has sustained content-based restrictions only in the most extraordinary circumstances." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 65, 103 S. Ct. 2875 (1983).

For example, "telephone listings and community information contained in the [yellow pages] directory constitute noncommercial speech" whereas individual advertisements within the yellow pages would constitute commercial speech. *Dex Media West, Inc. v. City of Seattle*, 696 F.3d 952, 957 (9th Cir. 2012); *see also Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384, 1388 (N.D.Ill. Sept. 12, 2016) (viewing attorney listing or directory, with advertisements placed on it as more akin to a yellow pages directory than an advertisement).

As set forth above the claim that Infotracer "compiles and generates the content" does not transform the nature of the records on its site. *See Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1326 (11th Cir. 2006)("Amazon's use of book cover images closely simulates a customer's experience browsing book covers in a traditional book store. Thus, it is clear that Amazon's use of book cover images is not an endorsement or promotion of any product or service, but is merely incidental to, and customary for, the business of internet book sales."). Indeed the free preview in paragraph 5 of the complaint merely lists a name and potential aliases, age, locations and relatives. (Compl., ¶5). This public information is an excerpt of the information contained in the report and the report is a listing of available information from public record sources. *See Willan v. Columbia County*, 280 F.3d 1160, 1163 (7th Cir. 2002)("the First Amendment creates a privilege to publish matters contained in public records").

The Seventh Circuit has noted a "commonsense distinction" between commercial speech and other varieties of speech, citing to the Supreme Court's decision in *Bolger* as providing certain "guideposts" for classifying speech with commercial and noncommercial elements. *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 517 (7th Cir. 2014), *citing United States v. Benson,* 561 F.3d 718, 725 (7th Cir. 2009)(*citing Bolger*, 463 U.S. at 66-67). Those factors are "whether: (1)

8

the speech is an advertisement; (2) the speech refers to a specific product; and (3) the speaker has an economic motivation for the speech." *Id.*

In applying those factors the court in *Vrdolyak* found that the fact that commercial benefit may be derived from the publication of public record information does not remove First Amendment protection:

> The court agrees with defendant that to hold otherwise would lead to the unintended result that any entity that publishes truthful newsworthy information about individuals such as teachers, directors and other professionals, such as a newspaper or yellow page directory, would risk civil liability simply because it generated revenue from advertisements placed by others in the same field. Defendant's actions are more like those of the magazine *Sports Illustrated* than Jewel. Defendant publishes non-commercial information and sells and places advertisements within that information. *Sports Illustrated* publishes a magazine that contains fully protected non-commercial speech. Within the magazine it sold and published advertisements, including Jewel's. Jewel's advertisement was commercial speech. The "Sponsored Listings" are commercial speech. Jewel's ad did not convert the entire commemorative issue into commercial speech. Nor do the Sponsored Listings turn the entire attorney directory into commercial speech.

*Vrdolyak*, 206 F. Supp. 3d at 1388-1389.

Plaintiff's Complaint thus fails as Infotracer is entitled to First Amendment protection.

WHEREFORE ACCUCOM CORPORATION d/b/a INFOTRACER respectfully requests that this Court dismiss Plaintiff's Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) and for such further relief as this Court deems equitable and just.

|  |  |
|---|---|
| David M. Schultz<br>John Ryan<br>Louis J. Manetti, Jr.<br>Hinshaw & Culbertson LLP<br>151 North Franklin St., Suite 2500<br>Chicago, IL 60606<br>Telephone: 312-704-3000<br>dschultz@hinshawlaw.com<br>jryan@hinshawlaw.com<br>lmanetti@hinshawlaw.com | Respectfully submitted,<br><br>HINSHAW & CULBERTSON LLP<br><br>/s/Louis J. Manetti, Jr.<br>One of the attorneys for Defendant |

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 5, 2021 a copy of the forgoing Memorandum in Support of Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6) was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

      By:   /s/*Louis J. Manetti, Jr.*
              Louis J. Manetti, Jr.
              Hinshaw & Culbertson LLP
              151 North Franklin St., Suite 2500
              Chicago, IL 60606
              Phone No.: 312-704-3000
              Fax No. 312-704-3001
              lmanetti@hinshawlaw.com

1040298\308079437.v1