IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARILYN AZUZ, individually and on behalf of all others similarly situated,<br>   Plaintiff,<br>v.<br><br>ACCUCOM CORPORATION, d/b/a INFOTRACER,<br>   Defendant. | Case No. 1:21 cv 1182<br><br>Judge Steven C. Seeger<br><br>Magistrate Judge Cummings |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULES 12(B)(2), 12(B)(3) AND 12(B)(6)**

Defendant, ACCUCOM CORPORATION d/b/a INFOTRACER ("Infotracer"), by and through its attorneys and for its Reply in Support of its Motions to Dismiss Plaintiff's Complaint pursuant to Federal Rules 12(b)(2), 12(b)(3) and 12(b)(6) states as follows:

**INTRODUCTION**

Though Plaintiff's Complaint is based entirely on the free preview embedded in her pleading at paragraph 5, she is purposefully vague as to who generated the preview, when or where it was generated and what the catalyst was in searching the name "Marilyn Azuz." Instead Plaintiff contends that the fact the information is on Infotracer's website at all is sufficient to establish that it subjected itself to personal jurisdiction in the Northern District of Illinois. She is incorrect.

While Plaintiff alleges that she "discovered" Infotracer "uses her name, age, city of domicile, and the "identity of her relatives" on its website, (Compl.,¶23), in opposing Defendant's Motion to Compel Arbitration she claims that she "never accessed, browsed, or otherwise used the website Infotracer.com." (Dkt #23-1, ¶6). Instead she claims that "Plaintiff's counsel" generated the screenshots, "not at the direction of or as [her] agents," but to investigate "Plaintiff's claims" in order to comply with Rule 11 obligations. (Resp., p.9). Plaintiff, however, cannot have it both ways. She cannot both retain counsel (an agent) to investigate her "claims" but then disclaim any

knowledge of Defendant's website when faced with an arbitration motion. In any event, the Terms are governed by the Commercial Arbitration Rules of the American Arbitration Association ("AAA") and it is the arbitrator who must decide any objections with respect to the existence, scope or validity of the Arbitration Agreement.

Finally, Plaintiff mischaracterizes Infotracer's public records database as "advertising" in order to avoid protection under the Communications Decency Act, ("CDA"), 47 U.S.C. § 230(c)(l) and the First Amendment. This Court should reject Plaintiff's conclusory allegations and dismiss Plaintiff's Complaint as further set forth below.

## ARGUMENT

### A. There is no specific jurisdiction over Defendant (Rule 12(b)(2) dismissal).

Plaintiff concedes that there is no general jurisdiction over Defendant, instead focusing her argument on specific jurisdiction. In doing so, Plaintiff continually misstates Infotracer's website as advertising directed to Illinois. Acquiring and housing information on persons who may reside in Illinois does not demonstrate that Infotracer was targeting Illinois in any manner. The report, for instance, identifies the "Location(s)" of the searched record for "Marilyn Azuz" as "Chicago, IL; Evanston, IL, Seattle, WA +12 More." (Compl., ¶5). The record is merely a compilation of information that shows Ms. Azuz may be located in 15 possible locations. This is a far cry from "targeting" Illinois. Moreover, Plaintiff herself denies ever accessing Infotracer's website. She instead argues "[t]he images were generated without Plaintiff ever visiting the website." (Resp., p.9). This argument seems inconsistent with the Complaint's allegations that she "discovered" Defendant's alleged use of "her name, age, city of domicile, and the identity of her relatives." (Compl., ¶23). And it is hardly a "discovery" when hiring an agent who pulls the information in order to pursue a claim based on it.

Contrary to Plaintiff's conclusory allegations, Infotracer's database is not advertising nor does it target Illinois in any manner. *Dobrowolski v. Intelius, Inc.*, 2017 U.S. Dist. LEXIS 138587, *12, 2017 WL 3720170 (N.D.Ill. Aug. 29, 2017)("*Dobrowolski I*")("Dobrowolski does not allege that Intelius's ads have any specific geographic tie to Illinois, only that Intelius's ads geographically target her, an Illinois resident, whenever her name is searched. But 'the mere fact that [defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction.'").

Plaintiff relies heavily on *Lukis v. Whitepages Inc.,* 454 F. Supp. 3d 746 (N.D. Ill. Apr. 16, 2020), claiming that the "facts are identical." (Rep., p.7). Yet, in analyzing personal jurisdiction and each of the factors, the court noted "[t]he complaint alleges that Lukis suffered emotional and financial harm due to Whitepages's deploying her personal information in free previews used to advertise its subscription services." *Id.* at *15-16. There are no claims in this case that Plaintiff suffered any harm as the result of Infotracer's free preview. Moreover, Plaintiff has presented no evidence regarding where the search was done (or who performed it) and at least one of her attorneys practices out of New York; this motion certainly presented plaintiff with an opportunity to come forward with these basic facts, but she chose not to do so and instead relies on some mysterious "discovery." Plaintiff's scant detail and admission that the images were generated for the sole purpose of filing this lawsuit do not establish that Infotracer targets Illinois.

Plaintiff cites *Tamburo v. Dworkin*, 601 F.3d 693, 703 (7th Cir. 2010)*,* claiming that "[c]onduct is purposefully directed if it is '(1) intentional conduct (or unintentional and allegedly tortious conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state.'" (Resp., p.5). But there is no purposeful conduct with knowledge that plaintiff would be injured in Illinois.

3

Defendant has an interactive website that can be accessed anywhere. It houses public records that may be searched when a user inputs a name. "It is the defendant—not the plaintiff or third parties—that must create the contacts in the forum state, and those contacts must be 'with the forum State itself, not ... with persons who reside there.'" *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 913, *citing Walden*, 134 S. Ct. at 1122.

Plaintiff brushes off *Colucci v. Whole Foods Mkt. Servs.*, 2021 WL 1222804 (April 1, 2021) and *Kinon Surface Design, Inc. v. Hyatt Int'l Corp.*, 2020 WL 7123068 (N.D. Ill. Dec. 4, 2020), claiming that each case "concerned interactive websites whose only connection to the forum state was that the websites could be accessed there, just as they could from anywhere else." (Resp., p.8). Plaintiff contends "[b]oth cases are a far cry from the extensive and pervasive conduct within Illinois essential for Accucom to compile the information needed to create its background reports on Illinois citizens." *Id.* However, there are no allegations as to pervasive conduct "in Illinois." Instead, Plaintiff alleges nothing more than that Infotracer's database includes records on Illinois residents. Housing data on an interactive website simply does not amount to targeting Illinois sufficient to confer personal jurisdiction. *See Kinon*, 2020 WL 7123068, at *17.

    **B.**    **Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(3).**

Plaintiff does not contest that use of the site binds the user to its Terms. Rather, she simply alleges that she was not the person who used the site. However, Plaintiff presents no evidence as to her contention that she had no involvement in generating the free preview. Nor does she contest that this claim falls within the scope of the Arbitration Agreement. *See Gore v. Alltel Communs., LLC*, 666 F.3d 1027, 1032-33 (7th Cir. 2012) ("[A] court may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible

of an interpretation that covers the asserted dispute.")(citations and internal quotation marks omitted).

> **1.  Plaintiff presents no evidence to support the claim that the free preview was generated without her involvement, knowledge or consent.**

Though all of Plaintiff's claims are premised on the search of her name on Defendant's website and the free preview that allegedly was generated from it, she disclaims all knowledge of all other content on Defendant's website. But she cannot evade the website's Terms and Arbitration Provision and at the same time rely on the website content to support her claims. Moreover, while she contends that "Plaintiff's counsel" is the one who generated the screenshots, she also attempts to argue in her Response, that counsel did so "not at the direction of or as agents of Plaintiff" but to allegedly investigate her claims. (Resp., p.9). But what claims were being investigated? Plaintiff purposefully avoids providing any detail as to when the screenshots were generated, who generated them, whether she had an attorney-client relationship at the time they were generated and, if not, why the attorney would have any obligation under Rule 11 – and it makes no sense to claim that no attorney-client relationship existed when the attorney generated the screenshots on "Marilyn Azuz."

It is as if Plaintiff would like us to believe that her counsel randomly searched the name of a person with whom counsel had no relationship, generated the free preview, and that thereafter somehow Plaintiff "discovered" that this free preview existed in order to file this lawsuit. That Plaintiff's counsel generated the free preview by happenstance as opposed to having done so after Plaintiff consented to representation strains credulity. Moreover, the Court should disregard the representation made in the Response that it was Plaintiff's counsel who accessed the website and that counsel was neither acting at the direction of Plaintiff nor as her agent because there is no evidence presented to support this contention. The party resisting arbitration bears the heavy

burden of demonstrating that the arbitration agreement is invalid or that the claims at issue do not fall within the purview of the arbitration agreement. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91–92 (2000). "[A] party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002).

In addition, though Plaintiff contends that the facts of the *Lukis* case are the same as the facts in this case, in *Lukis*, plaintiff's counsel browsed Whitepages' website a year after the case was filed in order to allegedly respond to Whitepages' motion for summary judgment. *Lukis v. Whitepages Inc.*, Case No. 19 C 4871, 2021 U.S. Dist. LEXIS 78453 *16-17; 2021 WL 1600194 (N.D.Ill. April 23, 2021). The court did not address whether or not the attorney bound Plaintiff to the arbitration agreement because the court determined that Whitepages waived arbitration by waiting until October 27, 2020 to bring the motion. Moreover, the court found that Whitepages could have raised arbitration regarding Lukis's browsing activity on the site based on the complaint's allegation that she "discovered" advertisements on the website stating, "[i]t is difficult to imagine how Lukis might have 'discovered' advertisements on the website without visiting it." *Id*. at *22-23.[1] Compare Compl., ¶23 ("Plaintiff discovered that Accucom uses her name, age, city of domicile, and the identify of her relatives in advertisements on the Accucom website to advertise and/or actually sell Defendant's products and services.").

---

[1] Whitepages has filed a notice of appeal. *Lukis v. Whitepages, Inc.*, Case No. 1:19-cv-4871 (N.D.Ill)(Dkt #181), *appeal pending* No. 21-1798. It further has a pending Motion to Dismiss as to newly added plaintiffs, again contesting personal jurisdiction to preserve the issue. (Dkt #183).

Plaintiff relies on *Callahan v. PeopleConnect, Inc.*, 2021 WL 1979161 (N.D.Cal. May 8, 2021) to support the contention that she can avoid arbitration by having her attorney access the website while at the same time disclaiming a relationship with the attorney at the time of access. (Resp., p.9). Just like *Lukis*, however, the decision denying arbitration in *Callahan* has also been appealed. *See Callahan v. PeopleConnect, Inc.*, 3:20-cv-09203-EMC (N.D.Cal.)(Dkt #47), *appeal pending* No. 21-16040. Moreover, another case out of the Northern District of California, *Independent Living Resource Center San Francisco v. Uber Technologies, Inc.*, No. 18-06503, 2019 U.S.Dist. LEXIS 127072, 2019 WL 3430656 (N.D. Cal. July 30, 2019), came to a different conclusion. In that case, plaintiffs claimed that Uber violated the ADA because access to a wheelchair accessible vehicle had longer wait times than other Uber services, was often unavailable and unlike other Uber services could not be booked in advance. *Id*. at *4. Plaintiffs claimed that they never downloaded the Uber App, nor did the Amended Complaint explain how plaintiffs tested wait times without downloading the app. Thereafter the plaintiffs conceded that a paralegal at their law firm's office tested the app and though they admitted she was their agent, she claimed to have downloaded the app "for personal use prior to the existence of th[e] agency relationship." *Id*. at *5. The court held:

> Here, Plaintiffs dispatched their agents to affirmatively test the Uber application in order to bolster their claim of discrimination. Plaintiffs then proceeded to file a complaint that specifically referenced the data they collected from the Uber App. Under such circumstances, there is nothing inequitable about binding Plaintiffs to the agreement which gained them access to the Uber App in the first place. *Id*. at *10-11.

Similarly, there is nothing inequitable here about binding Plaintiff to the Terms her counsel agreed to by using the website. While *Callahan* distinguished *Independent Living* claiming that it failed to address issues of state law, both Massachusetts and Illinois recognize that an attorney is an agent of his/her client/principal. *See Burt v. Gahan*, 351 Mass. 340, 342, 220 N.E.2d 817, 818

(Mass. 1966); *Horwitz v. Holabird & Root*, 312 Ill.App.3d 192, 726 N.E.2d 632 (1st Dist. 2000); *see also Ragusa v. City of Streator*, 95 F.R.D. 527 (N.D. Ill. 1982). Moreover, because Plaintiff's counsel states he was accessing the website in order to discharge his Rule 11 obligations, he admits that the only reason he did so was to act on Plaintiff's behalf in order to file a lawsuit. In addition, Plaintiff's counsel was provided with a conspicuous hyperlink to the Terms including the Arbitration Provision when he/she ran the search and, as consumer class counsel, would have been especially aware that by engaging in the search he/she was accepting the Terms.

In the event that the Court is not prepared to dismiss this matter pursuant to Rule 12(b)(3), it should enter and continue the Motion to allow for discovery on the issue of arbitrability only.

**2.     The validity of the Arbitration Provision is an issue for the arbitrator.**

In any event, arbitrability issues including the existence of the Arbitration Provision are for the arbitrator to decide because the Terms incorporate the Commercial Arbitration Rules of the AAA. *Ali v. Vehi-Ship*, 2017 U.S. Dist. LEXIS 194456, *10-11, 2017 WL 5890876 ("The incorporation of the AAA Rules means that the Plaintiffs' arguments about the validity of the arbitration clause (and, to the extent they are made, to the Agreement as a whole) must be made to the arbitrator."). Thus, the fact that Plaintiff challenges the existence of the Agreement itself is an issue for the arbitrator. *K.F.C. v. Snap, Inc.*, Case No. 3:21-cv-9-DWD, 2021 U.S. Dist. LEXIS 108695, *7, 2021 WL 2376359 (S.D.Ill. June 10, 2021)(finding that even though plaintiff argues the underlying contract was void, "[n]evertheless, the law requires that the court 'enforce a valid delegation clause even if the underlying arbitration agreement is potentially void.'"). In *Grabowski v. Platepass, L.L.C.*, No. 20 C 7003, 2021 U.S. Dist. LEXIS 92859 (N.D. Ill. May 17, 2021), the court recognized this principle noting "the question of whether a purported nonsignatory

can enforce an arbitration agreement concerns a question of arbitrability and, thus, must be decided by the arbitrator." *Id.* at *9 (citations omitted).

  **C. Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(6).**

  **1. Plaintiff fails to allege that her name was used for a commercial purpose**.

Plaintiff acknowledges that IRPA requires the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising. Yet Infotracer did not use her name to attract customers. Rather, Plaintiff contends that by even having the name as part of its database, Infotracer has violated the IRPA even if the name is never searched. But the fact that Plaintiff's name was part of a database does not establish its use for a commercial purpose. *See Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384, 1388 (N.D.Ill. 2016). Plaintiff claims that "Defendants' position would lead to an absurd result whereby a TV commercial using a plaintiff's persona without her consent may not be actionable if it aired at 4:00 in the morning instead of 4:00 in the afternoon." (Resp., p.13). However, in Plaintiff's example, there is a "use" of a "persona"- the making and airing of a commercial. In contrast, here, there is no access to Plaintiff's name and no "use" because Plaintiff does not allege that anyone searched her name to generate a free preview [other than raising the claim that her lawyer did so to file this lawsuit].

  **2. Infotracer's free preview does not identify her within the meaning of the IRPA.**

Plaintiff claims that the preview identifies her. She does not plead, however, that all of the information in the preview is linked to her or is accurate. Rather she contends that it includes "enough" information to identify an individual. (Compl., ¶6). For instance, the name shows "Marilyn Azuz" with possible aliases including "Marilyn Azul," "Marilyn K. Azuz" and "Marilyn

Meyer." (Compl., ¶5). It also shows locations in "Chicago, IL," "Evanston, IL" and "Seattle, WA." *Id.* Plaintiff pleads that the preview includes her current city and state of residence, (Compl., ¶23), but the preview includes possible locations and does not indicate whether any of those listed is "current." Instead, the preview includes possible information associated with the name "Marilyn Azuz" in "IL."

Claiming that *Dobrowolski v. Intelius, Inc.,* 2018 U.S.Dist. LEXIS 240434, 2108 WL 11185289 (N.D.Ill. May 21, 2018)("*Dobrowolski II*") supports her position, Plaintiff contends, "[t]he *Dobrowolski II* court dismissed the plaintiff's IRPA claims because it held that the challenged advertisement alone did not sufficiently identify the plaintiffs 'because multiple people with the same name are listed,' despite holding that the 'plaintiffs are identified by the additional personal details on the marketing page.'" (Resp., p.15). Yet, Plaintiff fails to fully address the court's holding. The court addressed not just the "advertising" page, but also the "marketing page" displayed below. (*Dobrowolski v. Intelius, Inc.*, Case No. 1:17-cv-01406 (N.D.Ill.)(Dkt #44, ¶26).



(**Figure 3**, showing a sampling of the listings displayed for "Anna Dobrowolski,"

Finding that the marketing page did not necessarily identify plaintiff, the court stated, "[b]ut plaintiffs overlook the fact that multiple people with the same name are listed on the marketing page. As a result, viewing the marketing page makes it no more or less likely that the ads identify plaintiffs, as opposed to another individual with the same name." *Id*. at *10. As in this case the "marketing page" that the *Dobrowolski II* court held did not violate IRPA contained name, age and locations of the searched individual. Infotracer's free preview is further distinguishable from *Lukis*, because there the free preview contained a single name, two phone numbers and full addresses. *See Lukis v. Whitepages Inc.*, Case No. 1:19-cv-04871 (N.D.Ill)(Dkt #1-1).

      **3.**    **Plaintiff fails to allege that her identity was used for a commercial purpose.**

Plaintiff attempts to distinguish *Dobrowolski II,* relying on a quote from *Lukis* stating "by contrast [to Dobrowolski II], [Defendant] used [Plaintiff's] identity to advertise not a background report regarding [Plaintiff], but a monthly subscription service giving the purchaser access to background reports on anybody in [Defendant's] database." (Resp., p.17), *quoting Lukis* at 761. The *Lukis* court found that the plaintiff's identity "was not part and parcel of the entire product or service being advertised." *Id*. The *Dobrowolski* reports (*Dobrowolski v. Intelius, Inc.*, Case No. 1:17-cv-01406 (N.D.Ill.)(Dkt #28) are depicted below.

11



(**Figure 4**, showing Intelius's offer to sell reports about Plaintiff Anna Dobrowolski.)

As the image makes clear, the reports do not include information on a single individual. They *include* search results on any Anna Dobrowolski in the United States. Just as in *Dobrowolski*, Infotracer's report result *includes*, but is not limited to, a report on Marilyn Azuz and her identity is "part of the product offered for sale." *Dobrowolski II* at *11.

Claiming that the free preview does not fall within the exemption for "non-commercial purposes" Plaintiff again relies on *Lukis*. However, there the court was ruling on a summary judgment motion and noted "Plaintiffs adduce evidence that the reports contain some information—their cell phone numbers and email addresses—unavailable from any public source." Resp., p.19, *citing Lukis II* at *7. In this case Plaintiff fails to identify any non-public

12

information contained on the free preview. As in *Vrdolyak v. Avvo, Inc*., 206 F. Supp. 3d 1384, 1388 (N.D.Ill. 2016) and *Nieman v. Versuslaw, Inc.,* 2012 U.S. Dist. LEXIS 109069, *1 (C.D.Ill. Aug. 2, 2012); *affirmed by Nieman v. Versuslaw, Inc.*, 512 Fed.Appx. 635 (7th Cir. 2013), providing access to public records is not commercial.

   **4. Defendant is immune from liability under Section 230 of the Communications Decency Act.**

Plaintiff claims that the CDA does not bar her claims because it is an "affirmative defense" and she pleads that Defendant "compile[s] and generate[s]" the content on its website. (Resp., p.19). However, *Callahan v. Ancestry.com Inc*., Case No. 20-cv-08437-LB, 2021 U.S.Dist.LEXIS 37811, 2021 WL 783524 (N.D. Cal. Mar. 1, 2021) demonstrates why both arguments fail. *Callahan* was decided on a motion to dismiss and thus did not involve asserting the CDA as an affirmative defense. It also involved the claim that Ancestry.com "created content by extracting the yearbook content and using the content in its own webpages and emails." *Id*. at *14. This is the exact same claim raised by Plaintiff- namely that Infotracer "compiles and generates the content it sells on its website." (Compl.¶12). Plaintiff's allegation that Infotracer "generates" the content does not remove the application of the CDA where it is evident from the embedded images in the complaint that the records in Infotracer's report are extracted from third parties. *See* Compl., ¶5 ("Where does your data come from?" "Our reports are compiled from thousands of public and private sources which include courthouses, county offices, municipalities, federal government sources & much more!"). The reports are "generated instantly" after payment. *Id*. Infotracer is not creating content. *See Callahan*, 2021 U.S.Dist. LEXIS 37811, *16-17.

Plaintiff cites to *Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. May 4, 2021), however, that case is distinguishable. (Resp., p.21). In *Lemmon*, parents of two boys who died in a high-speed car accident after one of the boys used Snapchat to document the car's speed, brought suit

against its creator, contending that through the negligent design of its app, it encouraged driving at dangerous speeds. Finding that the CDA did not apply, the court focused on the nature of the cause of action alleged:

> That Snap allows its users to transmit user-generated content to one another does not detract from the fact that the Parents seek to hold Snap liable for its role in violating its distinct duty to design a reasonably safe product. As in *Internet Brands*, Snap "acted as the 'publisher or speaker' of user content by" transmitting Landen's snap, "and that action could be described as a 'but-for' cause of [the boys'] injuries." 824 F.3d at 853.

*Lemmon*, 995 F.3d at 1092.

In contrast, this case has nothing to do with the manufacture of a product or a negligent design. *See Id.* (As opposed to manufacturers, "entities acting solely as publishers—i.e., those that 'review[] material submitted for publication, perhaps edit[] it for style or technical fluency, and then decide[] whether to publish it,' generally have no similar duty.")( citations omitted)

### 5. Plaintiff's claims are barred by the First Amendment.

Infotracer's preview includes information such as names, ages and addresses. This information is entitled to full First Amendment protection and Plaintiff does not argue otherwise. Instead Plaintiff repeatedly characterizes the "preview" as an "advertisement" for Infotracer's reports. But the excerpted content contained in the preview does not lose its protection "simply because of the change in 'venue.'" *Nat'l Life Ins. Co. v. Philips Publ'g, Inc*., 793 F.Supp. 627, 645 n.33 (D.Md. 1992).

The speech in Infotracer's free preview is "inextricably intertwined" with the information in its reports because it is "legally or practically impossible for the speaker to separate out the commercial and noncommercial elements of [the] speech." *Jordan v. Jewel Food Stores, Inc*., 743 F.3d 509, 521 (7th Cir. 2014). "In that situation the package as a whole gets the benefit of the higher standard of scrutiny applicable to noncommercial speech." *Id.*

14

While Plaintiff relies again on *Lukis* to state that the First Amendment does not apply, (Resp., p.23), there the court noted that Whitepages's First Amendment argument was "underdeveloped" and "forfeited." *Lukis II*, 2020 U.S.Dist. 199691 at *26. Moreover, simply by characterizing the "preview" as an advertisement for the reports does not remove First Amendment protection because advertising protected speech is itself protected. *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67, n.14, 103 S. Ct. 2875 (1983).

In attempting to distinguish the decisions cited by Defendant, Plaintiff essentially argues that First Amendment protection does not apply where protected speech is allegedly used to "entice users to purchase Defendant's services." (Resp., pp. 26-27, Compl., ¶7). However, as the court stated in *Nieman v. Versuslaw, Inc.*, 512 Fed.Appx. 635, 638 (7th Cir. 2013), "[t]he for-profit nature of the defendants' aggregation websites does not change the analysis; speech is protected even when "carried in a form that is 'sold' for profit."

WHEREFORE, Defendant, Accucom Corporation, d/b/a Infotracer, respectfully requests that this Court dismiss Plaintiff's Complaint and enter judgment in its favor (1) pursuant to Rule 12(b)(2) for lack of personal jurisdiction; (2) pursuant to Rule 12(b)(3) for improper venue; and (3) pursuant to Rule 12(b)(6) for failure to state a claim.

1040298\308321823.v1

Respectfully submitted,

HINSHAW & CULBERTSON LLP

/s/ Louis J. Manetti, Jr.
Louis J. Manetti, Jr.

David M. Schultz
John Ryan
Louis J. Manetti, Jr.
Hinshaw & Culbertson LLP
151 North Franklin St., Suite 2500
Chicago, IL 60606
Telephone: 312-704-3000
Facsimile: 312-704-3001
dschultz@hinshawlaw.com
jryan@hinshawlaw.com
lmanetti@hinshawlaw.com
Attorneys for Defendant

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 25, 2021, a copy of the forgoing Defendant's Reply in Support of its Motions to Dismiss Plaintiff's Complaint was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

      By: /s/Louis J. Manetti, Jr.
           Hinshaw & Culbertson LLP
           151 North Franklin St., Suite 2500
           Chicago, IL 60606
           Phone No.: 312-704-3000
           Fax No. 312-704-3001

1040298\308321823.v1