# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARILYN AZUZ, individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiff, | ) Case No. 1:21 cv 1182<br>) |
| v. | ) Judge Steven C. Seeger<br>) |
| ACCUCOM CORPORATION, d/b/a INFOTRACER, | )<br>)<br>) |
| Defendant. | )<br>) |

### MEMORANDUM IN SUPPORT OF DEFENDANT'S RENEWED MOTION TO DISMISS PURSUANT TO RULE 12(B)(3)

Defendant, Accucom Corporation, d/b/a Infotracer, ("Infotracer") by and through its attorneys and for its Memorandum in Support of its Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(3) states as follows:

## I. INTRODUCTION

Plaintiff contends her information was accessed in a free preview on Infotracer's site. She includes a screen shot of that preview at paragraph 5 of her Complaint. (Compl., ¶¶5, 23-25). Defendant moved for dismissal pursuant to Rule 12(b)(3) on the basis that in order to generate the screenshots Plaintiff had to accept Infotracer's "Terms of Service" including an arbitration provision. [Dkt #17]. Plaintiff opposed the motion by denying that she had visited infotracer.com. Rather, she claimed that her attorneys accessed the site and generated the screenshots in order to comply with Rule 11 obligations. [Dkt #23, p.9]. After the motion was fully briefed the Court denied the motion without prejudice, finding that there was a "fact question about who conducted the search for Azuz's name (i.e. Azuz, or her attorney), and if it was her attorney, whether that attorney consented to the arbitration provision on Azuz's behalf by conducting the search." [Dkt #32, p.2].

The parties conducted limited discovery on the issue and Defendant now renews its motion because it is clear that the search by Plaintiff's attorneys was conducted within the scope of their representation of Plaintiff and for her benefit. Indeed Plaintiff testified that her attorneys had her authority to perform an investigation of her claims, which included obtaining the screenshots. (See Deposition of Marilyn Azuz, Ex. A, p.33). By using infotracer.com to access a free preview on behalf of Plaintiff for her benefit and with her consent, Plaintiff's attorneys bound her to the Terms of Service ("Terms") and agreed to arbitrate in Boston, Massachusetts any dispute concerning Accucom Corporation, including any InfoTracer services. Because the Terms contain a forum selection clause requiring arbitration in Boston, Massachusetts, this Court should dismiss Plaintiff's Complaint pursuant to Rule 12(b)(3).[1]

## II. BACKGROUND

### A. Infotracer's services

Infotracer owns and operates the website www.infotracer.com. It currently houses over 5 billion public records and offers access to public records. (*See* Declaration of WaiJe Coler, Ex. B, ¶3). Infotracer's website is governed by its Terms of Service ("Terms"). By accessing, browsing or otherwise using its site, internet users agree to be bound by Infotracer's Terms. (Ex. B, ¶4). Infotracer offers users a free preview of its service. A user may run a free public record search preview by entering certain information such as "Name," "Phone," "Email," and "Username" and clicking "Search." At the time of the search that generated the images in Plaintiff's Complaint, prior to clicking "Search" the user was notified "Conducting a search on InfoTracer.com is subject to our Terms of Service and Privacy Notice." https://infotracer.com/. (Ex. B, ¶5).

---

[1] Defendant reserves the right to renew its Motions to Dismiss pursuant to Rule 12(b)(2) and 12(b)(6) [Dkts #16,18] in the event the Court finds that this Court is the proper venue for these claims. The Court previously denied the motions as moot in order to first address arbitration. [Dkt #32].

The Terms were also accessible via a hyperlink under the Menu bar on the bottom of the home screen. A disclaimer was displayed on the bottom of the home screen. (Ex. B, ¶7). A hyperlink to the Terms was also available on the bottom of every page of infotracer.com. (Ex. A, ¶8).

B. **Terms of Service**

A user who clicks on the hyperlink will be directed to the Terms, which state in part:

> By accessing, browsing, or otherwise using the Sites, you agree to be legally bound by these Terms of Use. **PLEASE READ THESE TERMS OF USE CAREFULLY. YOUR USE OF THE SITE CONSTITUTES YOUR ACCEPTANCE OF THESE TERMS OF USE. DO NOT USE THE SITE IF YOU ARE UNWILLING OR UNABLE TO BE BOUND BY THE TERMS OF SERVICE**.

(Ex. 1 to Ex. B).

Once the user entered information in the search engine and clicked on the large red "Search" box, a Notice was triggered and displayed on the screen. (Ex. B, ¶10).

A user could not access the free preview without clicking "I AGREE." (Ex. B, ¶11).

C. **Arbitration Provision**

The Terms contain the following Arbitration Provision:

Arbitration:

> Any dispute concerning [Accucom Corporation],[2] any InfoTracer services, Information, or these Terms will be settled by binding arbitration in Boston, Massachusetts, in accordance with the Commercial Arbitration Rules of the American Arbitration Association. Judgment upon the award made by the arbitrator(s) may be entered in any court having jurisdiction thereof. You acknowledge that agreeing to such binding arbitration constitutes a waiver of your right to a jury trial, and that this agreement to arbitrate is voluntary and not legally required. If any arbitration or legal action or similar proceeding is instituted by either party concerning the payment of our fees or costs advanced hereunder, the

---

[2] Accucom's name was changed to InfoPay, Inc.

prevailing party will be entitled to collect its reasonable attorneys' fees, in addition to any other relief the party may obtain. (Ex. A, ¶12).

**D.   Plaintiff's retention of her attorneys**

Ms. Azuz first sought legal advice from Bursor & Fisher on January 8, 2021. (Pl.'s Second Supplemental Discovery Responses are attached as Exhibit C). She provided her name, phone number, email address and zip code in response to a Facebook ad. (Ex. A pp.12-13). She executed an engagement agreement with Bursor & Fisher on February 24, 2021. The agreement provided █████████████████████████████████████████████████████████████ (The engagement agreement has been marked Confidential pursuant to the Agreed Confidentiality Order and Defendant is accordingly requesting leave to file it under seal as Ex. D). In order to bring a claim on her behalf against Infotracer Plaintiff's attorneys had to investigate Infotracer and infotracer.com and they had to see how the website worked. (Ex A, p.22). One of the ways her attorneys had to investigate her claim was by searching her name on Infotracer.com. (Ex. A, p.23). They had to confirm with her that the search information they pulled up was her. (Ex. A, p.23).

Bursor & Fisher had Ms. Azuz's authority to perform an investigation regarding her claims, which included generating the screenshots in the Complaint. (Ex. A, p.33). Plaintiff admits that she discovered that "Accucom uses your name, age, city of domicile, and the identity of your relatives in advertisements on the Accucom website to advertise and/or actually sell defendant's products and services" as alleged in paragraph 23 of the complaint through her attorneys. (Ex. A, p.24). They showed her the documents. (Ex. A, p.24). Her attorneys could not confirm that the screenshots pertained to her without her input. (Ex. A, p.26).

Julian Diamond, an attorney at Bursor & Fisher, captured the screenshots on February 25, 2021. (Ex. C, Second Supplemental Response to Interrogatory No. 7). Ms. Azuz admits that she

4

reviewed the draft complaint on February 25, 2021. (Ex. A, pp.28-29). The screenshots from Infotracer were in the complaint when she reviewed it. (Ex. A, p.29). Ms. Azuz was aware that her lawyers used infotracer.com to generate the screenshots. (Ex. A, p.29). She discussed the screenshots with her lawyers. (Ex. A, p.29). Ms. Azuz believes that including the screenshots in her complaint helps her claim. (Ex. A, p.32).

In order to run the free preview that generated the screenshots, Mr. Diamond had to enter Ms. Azuz's name, phone, email or username in the Search box on infotracer.com. (Ex. B, ¶5). After entering the information Mr. Diamond had to click "Search." (Ex. B, ¶5). Prior to clicking "Search" he was conspicuously notified "Conducting a search on InfoTracer.com is subject to our Terms of Service and Privacy Notice." https://infotracer.com. (Ex. B, ¶5). The Terms were accessible via a conspicuous hyperlink. By accessing, browsing or otherwise using its site, Mr. Diamond agreed to be bound by Infotracer's "Terms of Service" which include an arbitration provision.

### III. ARGUMENT

**Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(3).**

Section 4 of the Federal Arbitration Act ("FAA") provides in part:

> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, *shall be within the district in which the petition for an order directing such arbitration is filed.* 9 U.S.C. § 4 (emphasis added)

The Seventh Circuit has interpreted this provision to mean that "where the arbitration agreement contains a forum selection clause, only the district court in that forum can issue a §4 order compelling arbitration." *Merrill Lynch, Pierce, Fenner & Smith v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995). Accordingly "when a court is presented with a motion to compel arbitration in a

5

different district, the proper action is to dismiss the complaint for improper venue under Rule 12(b)(3)." *Bahoor v. Varonis Sys., Inc*., 152 F. Supp. 3d 1091, 1096 (N.D.Ill. Dec. 28, 2015); *see also Nandorf, Inc. v. Applied Underwriters Captive Risk Assur. Co.,* 410 F.Supp.3d 882, 887 (N.D.Ill. Sept. 23, 2019). Whether brought under §4 of the FAA or Rule 12(b)(3), however, the inquiry is the same. Namely, "did the plaintiff[] agree to arbitrate the claims asserted in [her] complaint?" *Ferenc v. Brenner*, 927 F. Supp. 2d 537, 542 (N.D.Ill. Feb. 21, 2013). As explained below, she did.

### A. The Federal Arbitration Act applies to the Arbitration Provision.

The Arbitration Provision is governed by the FAA which mandates that binding arbitration agreements "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2. The FAA is extremely broad and applies to any transaction directly or indirectly affecting interstate commerce. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995).

Plaintiff alleges that she is a citizen of Illinois who resides in Chicago, Illinois. (Compl., ¶18). She alleges that Defendant Accucom Corporation is a Delaware corporation with its principal place of business located in Boston, Massachusetts. (Compl., ¶19). Plaintiff contends that her information was accessed in the Northern District of Illinois. (Compl., ¶22). Moreover, Plaintiff's attorney Julian Diamond at Bursor & Fisher captured the screenshots in the Complaint. Mr. Diamond is registered with the New York State Bar with a business address at 888 7th Ave., New York, NY 10106-0001. See https://iapps.courts.state.ny.us/attorneyservices/search

1040298\311166545.v1

The use of the Infotracer site is a matter affecting interstate commerce. *See Citizens Bank v. Alafabco, Inc.,* 539 U.S. 52, 56-56 (2003)(interstate commerce satisfied "if in the aggregate the economic activity in question would represent 'a general practice…subject to federal control.'").

The Supreme Court routinely recognizes that the FAA embodies a "national policy favoring arbitration," *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, (2006); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011), and therefore, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, (1983).

Simply put, the "overarching purpose of the FAA, evidenced in the text of §§ 2, 3 and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Concepcion*, 563 U.S. at 339; *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S.Ct. 524, 528 (2019) ("Under the Act, arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms."). Section 4 of the FAA "requires courts to compel arbitration 'in accordance with the terms of the agreement' upon the motion of either party to the agreement..." *Concepcion*, 563 U.S. at 344. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration..." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

Under the FAA, arbitration must be compelled where: (1) a valid, enforceable agreement to arbitrate exists and (2) the claims at issue fall within the scope of that agreement. *See Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). An arbitration agreement governed by the FAA, like the Arbitration Provision here, is presumed to be valid and enforceable. *See Mitsubishi Motors Corp. v. Solver Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-

7

1040298\311166545.v1

27 (1985). The party resisting arbitration bears the heavy burden of demonstrating that the arbitration agreement is invalid or that the claims at issue do not fall within the purview of the arbitration agreement. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91–92 (2000).

> **B.   The Arbitrator should decide the validity and scope of the Arbitration Provision.**

Any question as to gateway arbitrability issues such as the existence, scope or validity of the Arbitration Provision must be determined by the arbitrator because the Commercial Arbitration Rules of the American Arbitration Association ("AAA") were incorporated by reference in the Terms. *See Ali v. Vehi-Ship*, 2017 U.S. Dist. LEXIS 19445, 2017 WL 5890876 (N.D.Ill. Nov. 27, 2017).

The Arbitration Provision provides:

> Any dispute concerning [Accucom Corporation], any InfoTracer services, Information, or these Terms will be settled by binding arbitration in Boston, Massachusetts, in accordance with the Commercial Arbitration Rules of the American Arbitration Association. (Ex. 1 to Ex. B).

Under the Commercial Arbitration Rules of the AAA, the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Rule 7(a) available at https://adr.org/commercial.

Because the Terms incorporate the AAA Rules, arbitrability issues are delegated to the arbitrator. *In re. Dealer Mgmt Sys. Antitrust Litig.*, 2020 U.S.Dist. LEXIS 29052, *33, 2020 WL 832365 (N.D.Ill. Feb. 20, 2020)(collecting cases); *see also Crooms v. Southwest Airlines Co.*, 459 F. Supp. 3d 1041, 1055 (N.D.Ill. May 12, 2020)( "Several Circuit Courts have ruled that incorporating AAA Rules constitutes 'clear and unmistakable evidence' that the parties agreed to arbitrate the question of arbitrability.").

However, even if the Court determines that it, rather than the arbitrator, must evaluate the enforceability of the Arbitration Provision and whether the claims fall within the scope of that provision, the Court must conclude that arbitration, and not district court, is the proper forum.

**C.     Plaintiff's attorney agreed to Arbitration and did so as Plaintiff's agent.**

The question of whether a valid agreement to arbitrate exists between the parties is a matter of state law. A federal court sitting in diversity applies the choice of law rules of the forum state. *Paulsen v. Abbott Lab'ys & Abbvie Inc.*, 2022 U.S. App. LEXIS 18859, *5 (7th Cir. 2022). "Under Illinois choice-of-law rules, the forum state's law applies 'unless an actual conflict with another state's law is shown, or the parties agree that forum law does not apply." *Id.* (citations omitted). In this case the Terms provide that they will be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts. However, there is no conflict between Illinois and Massachusetts law with respect to whether Plaintiff's counsel agreed to arbitrate her claims and whether he bound her to the agreement. Thus, the Court need not undertake a conflicts of law analysis. *See Gorny v. Wayfair Inc.*, 2019 U.S. Dist. LEXIS 95619, *13, 2019 WL 2409595 (N.D.Ill. June 7, 2019)("Neither party contends, however, that there is any substantive difference between the governing standards in Illinois and Massachusetts, so the Court need not perform a choice-of-law analysis and will apply the law of Illinois, the forum state."). In any event, under either Illinois or Massachusetts law, Plaintiff's attorney agreed to the Arbitration Provision and did so within the scope of the attorney-client relationship on behalf of Plaintiff.

**1.     Julian Diamond agreed to the Arbitration Provision.**

When Mr. Diamond ran the search he was conspicuously notified "Conducting a search on InfoTracer.com is subject to our Terms of Service and Privacy Notice." https://infotracer.com/. *See Emmanuel v. Handy Techs., Inc.*, 2021 U.S.App. LEXIS 8467 (1st Dist. Mar. 22, 2021)("for

9

an online contract to have been formed under Massachusetts law the user of the online interface must have been given 'reasonable notice of the terms' of the agreement and must have made a 'reasonable manifestation of assent to those terms,'" *citing Kauders v. Uber Technologies, Inc.*, 486 Mass. 557 (Mass 2021)); *Johnson v. Uber Techs., Inc.*, 2018 U.S.Dist. LEXIS 161155, 2018 WL 403938 (N.D.Ill. Sept. 20, 2018)("Illinois law requires that a consumer be provided reasonable notice of all the terms and conditions of an agreement as well as reasonable notice that, by clicking a button, the consumer is assenting to the agreement."); *Friends for Health:Supporting the N. Shore Health Ctr. v. Paypal, Inc.*, 2018 U.S. Dist. LEXIS 98187, *13, 2018 WL 2933608 (N.D.Ill. June 12, 2018)(the court found reasonable notice where terms of the user agreement, including arbitration provision were available either through a scroll box or through a hyperlink).

In *Johnson*, the court enforced an online arbitration agreement where the app plaintiff used to create his Uber account included the statement: "[b]y creating an Uber account, you agree to the Terms of Service & Privacy Policy." *Id*. at *10. The court found that the statement appeared in an easy-to-read font on an uncluttered screen. *Id*. A visible hyperlink when clicked, brought the user to a screen displaying Uber's Terms of Service. As a result, the manner in which the statement and the terms were presented placed a reasonable person on notice that there were terms incorporated with creating an account, and by creating an account he/she was agreeing to those terms. *Id*. at *10-11.

Similarly, in *Gorny v. Wayfair Inc*., 2019 U.S. Dist. LEXIS 95619, 2019 WL 2409595 (N.D.Ill. June 7, 2019), the court concluded that the web pages presented to plaintiff adequately communicated all the terms and conditions of the agreement and that the circumstances supported the inference that he received reasonable notice of the relevant terms including the arbitration clause. The plaintiff accessed the site (Wayfair.com) repeatedly and made purchases where

immediately below the button "Place Your Order," the message "By placing an order, you are agreeing to our Privacy Policy and Terms of Use" was displayed. *Id*. at *16-17. The court thus rejected plaintiff's argument that the arbitration agreement was not enforceable because he never "saw" the terms of use and never signed the arbitration agreement, concluding, "the web pages presented to Gorny adequately communicated all the terms and conditions of the agreement and that the circumstances support the inference that he received reasonable notice of those terms." *Id.* at *16.

In this case Plaintiff admits that Mr. Diamond used Infotracer's website to generate the images embedded in her Complaint. (Compl., ¶5). Prior to running the search he was provided reasonable notice of the Terms including the Arbitration Provision because he was advised, "Conducting a search on InfoTracer.com is subject to our Terms of Service and Privacy Notice." https://infotracer.com/. The preview further referenced Infotracer's "Terms of Use" in the Unlimited Search Access box. (Compl., ¶5). Infotracer's Terms are available through a hyperlink on the bottom of every page of infotracer.com. (Ex. B,¶8). Under the totality of the circumstances Mr. Diamond was placed on reasonable notice that by engaging in the search on behalf of Plaintiff he was agreeing to the Terms. *See Miracle-Pond v. Shutterfly, Inc.*, 2020 U.S. Dist. LEXIS 86083, *12, 2020 WL 2513099 (N.D.Ill. May 15, 2020)(Because Shutterfly's "app contained a clear and conspicuous statement that ... a user agreed to the Terms of Service and Privacy Policy" by clicking a link or pressing a button, a reasonable user who completed that process would understand that he/she was manifesting assent to the Terms); *Hubbert v. Dell Corp.*, 835 N.E.2d. 113 (Ill. App. 2005)(enforcing arbitration where "Terms and Conditions of Sale" were available via a blue hyperlink on defendant's web pages when plaintiffs were completing their online purchases); *Wickberg v. Lyft, Inc.*, 356 F.Supp.3d 179, 184 (D. Mass. Dec. 19, 2018)(finding plaintiff "entered

11

into a valid arbitration agreement by affirmatively assenting to reasonably communicated terms" where plaintiff clicked a box agreeing to the terms of service during the registration process and the phrase "Lyft's terms of service" were highlighted in pink and hyperlinked to the written terms); *see also Shirley v. Rocket Mortg.*, No. 2:21-cv-13007, 2022 U.S.Dist. LEXIS 119855 (E.D.Mich. July 7, 2022)(terms provided in hyperlink under second and third buttons clicked by user).

This is especially so where the user is a licensed attorney practicing in the are of privacy law and class actions. www.bursor.com/team/julian-diamond/

### 2. Mr. Diamond was acting within the scope of the attorney-client relationship with Plaintiff's authority.

Under both Illinois and Massachusetts law, an attorney is an agent of his/her client/principal. *See Burt v. Gahan*, 351 Mass. 340, 342, 220 N.E.2d 817, 818 (Mass. 1966); *Horwitz v. Holabird & Root*, 312 Ill.App.3d 192, 726 N.E.2d 632 (1st Dist. 2000); *see also Ragusa v. City of Streator*, 95 F.R.D. 527 (N.D. Ill. 1982); *Bradford v. Denny's Inc.*, 1998 U.S. Dist. LEXIS 8689, *9-10 (N.D.Ill. June 4, 1998).

Generally, a client is bound by the acts or omissions of his attorney if the conduct is within the scope of the attorney's authority. *Id.*, *citing Sakun v. Taffer*, 268 Ill. App. 3d 343, 643 N.E.2d 1271, 1277, 205 Ill. Dec. 664; *see also Opalenik v. Labrie*, 2015 U.S. Dist. LEXIS 91991, *6 (D.Mass. July 15, 2015)(noting the general rule that an attorney has the authority as an agent to bind a client on actions taken within the scope of the attorney's authority); *Nieves v. Marraquin*, 2009 Mass. App. Div. LEXIS 73, *10, n.8 (Mass. App. Ct. 2009)("[L]itigants are properly bound by the conduct of their attorneys.").

Mr. Diamond conducted the search for Plaintiff's benefit and with her knowledge. He conducted the search that generated the images embedded in Plaintiff's Complaint on February 25, 2021 after Plaintiff signed the engagement agreement. (Exs. A, D). Plaintiff seeks to avoid

arbitration by claiming that attorney Julian Diamond "captured the images in paragraph 5 [of the Complaint] while fulfilling his FRCP Rule 11 responsibilities" and that "[t]he images were not captured at her request or direction nor on her behalf." (Second Suppl. Resp., No 7).[3] However, this assertion is belied by Plaintiff's sworn deposition testimony in which she admitted that she relied on her lawyers to properly investigate her claim, that including the images in her complaint benefited her claim and that her attorneys had her authority to perform an investigation which included obtaining the images. (Ex. A, pp.32-33).

In *Bradford v. Denny's Inc*. No. 97 C 15, 1998 U.S. Dist. LEXIS 8689 (N.D.Ill. June 4, 1998), Plaintiff brought suit seeking to enforce an arbitration award. Denny's claimed its attorney had no authority to enter into an agreement for binding arbitration and to admit liability on its behalf. The court found that Plaintiff established Denny's counsel had apparent authority because she established that "(1) Denny's, the principal, consented to or acquiesced in the exercise of authority by its agent, Eckardt; (2) based upon her knowledge of the facts, Bradford possessed a good faith belief that Eckardt possessed such authority; and (3) Bradford relied to her detriment on Eckardt's apparent authority." *Id.* at *10. The court further found that even if Denny's lawyer exceeded his authority, Denny's ratified his acts.

Under ratification, "the principal is bound by the unauthorized act of his agent if 'the principal learns of an unauthorized transaction, then retains the benefits of the transaction or takes a position inconsistent with nonaffirmation." *Id.* at *13*, citing Stathis*, 692 N.E.2d at 807.

---

[3] That Plaintiff's attorneys, rather than Plaintiff, ran the search for purposes of generating images for use in the litigation was intentional. And Plaintiff's attorneys have recently been subject to discovery on this issue in numerous cases including this one. *See Knapke v. PeopleConnect, Inc*., 2022 U.S. App. LEXIS 17956 (9th Cir. June 29, 2022); *La Fronza v. PeopleConnect, Inc*., 2022 U.S. Dist. LEXIS 77750 (N.D.Ill. April 29, 2022); *Bonilla v. PeopleConnect, Inc*., 21-cv-51 (N.D.Ill. Mar. 29, 2022).

"Ratification of an unauthorized act is tantamount to an original authorization and confirms the originally unauthorized act." *Id.*

Plaintiff cannot avoid arbitration because her attorneys did the search. Not only did she admit that the search (and by extension agreement to the Terms the search was subject to) was authorized by her, she also knew her attorneys had done the search and investigated Infotracer's website in order to bring her claim. *See* Ex A. They performed the search within the scope of the attorney-client relationship. As the court stated in *Bradford*, "Generally, notice to an attorney is notice to the client and knowledge of an attorney is knowledge of, or imputed to, the client, notwithstanding whether the attorney has actually communicated such knowledge to the client." *Id., citing Eckel v. Bynum*, 240 Ill.App.3d 867 (1st Dist. 1992).

In *Independent Living Resource Center San Francisco v. Uber Technologies, Inc.*, No. 18-06503, 2019 U.S.Dist. LEXIS 127072, 2019 WL 3430656 (N.D. Cal. July 30, 2019) plaintiffs claimed that Uber violated the ADA because access to a wheelchair accessible vehicle had longer wait times than other Uber services, was often unavailable and unlike other Uber services could not be booked in advance. *Id.* at *4. Plaintiffs claimed that they never downloaded the Uber App, nor did the Amended Complaint explain how plaintiffs tested wait times without downloading the app. Thereafter the plaintiffs conceded that a paralegal at their law firm's office tested the app and though they admitted she was their agent, she claimed to have downloaded the app "for personal use prior to the existence of th[e] agency relationship." *Id*. at *5. The court held:

> Here, Plaintiffs dispatched their agents to affirmatively test the Uber application in order to bolster their claim of discrimination. Plaintiffs then proceeded to file a complaint that specifically referenced the data they collected from the Uber App. Under such circumstances, there is nothing inequitable about binding Plaintiffs to the agreement which gained them access to the Uber App in the first place. *Id*. at *10-11.

14

Similarly here Plaintiff expressly authorized her lawyers to investigate her claims which included obtaining screenshots to bolster her claims against Defendant. In order to obtain the screenshots Mr. Diamond agreed to the Terms including Arbitration and acted on behalf of Plaintiff in doing so.

### D. Plaintiff's claims fall within the scope of the Arbitration Provision.

While as set forth above, whether Plaintiff's claims fall within the scope of the arbitration provision is a matter for the arbitrator to decide, the claims plainly fall within the broad Arbitration Provision. Because the FAA reflects a "liberal federal policy favoring arbitration agreements," "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."

The Arbitration Provision provides that "[a]ny dispute concerning [Accucom Corporation], any InfoTracer services, Information, or these Terms will be settled by binding arbitration in Boston, Massachusetts…" (Ex. B, ¶12). Claims must be arbitrated "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," and "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Techs*., *Inc.*, 475 U.S. at 650. Any doubts about whether a claim is arbitrable "should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25.

There is no question that Plaintiff's Illinois Right of Publicity claim premised on the alleged use of her "name, age, city of domicile, and the identity of her relatives in advertisements on the Accucom website" (Compl., ¶23) is a "dispute concerning Accucom Corporation."

Accordingly, Plaintiff's claims fall within the scope of the Arbitration Provision.

WHEREFORE ACCUCOM CORPORATION d/b/a INFOTRACER respectfully requests that this Court dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(3) and for such further relief as this Court deems equitable and just.

Respectfully submitted,

HINSHAW & CULBERTSON LLP

/s/*Jennifer W. Weller*
Jennifer W. Weller

David M. Schultz
John Ryan
Jennifer W. Weller
Louis J. Manetti, Jr.
Hinshaw & Culbertson LLP
151 North Franklin St., Suite 2500
Chicago, IL 60606
Telephone: 312-704-3000
Facsimile: 312-704-3001
dschultz@hinshawlaw.com
jryan@hinshawlaw.com
jweller@hinshawlaw.com
lmanetti@hinshawlaw.com
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2022, a copy of the Defendant's Renewed Memorandum in Support of its Motion to Dismiss Pursuant to Rule 12(b)(3) was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/*Jennifer W. Weller*
    Jennifer W. Weller
    Hinshaw & Culbertson LLP
    151 North Franklin St., Suite 2500
    Chicago, IL 60606
    Phone No.: 312-704-3000
    Fax No. 312-704-3001
    jweller@hinshawlaw.com

1040298\311166545.v1