IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARILYN AZUZ, individually and on behalf of others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ACCUCOM CORPORATION d/b/a INFOTRACER, <br><br> Defendant. | Case No. 21 C 1182 <br><br> Hon. LaShonda A. Hunt |

**MEMORANDUM OPINION AND ORDER**

Marilyn Azuz ("Plaintiff") brought this putative class action against Accucom Corporation d/b/a Infotracer ("Accucom") alleging violations of the Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1, *et seq*. Before the Court is Accucom's motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). (Mot. to Dism., Dkt. 134). In addition, just days before Accucom's filing, proposed intervenors Dominick Dobija and Abel Demissie sought leave to file an amended complaint adding them as class representatives if Plaintiff could not represent the putative class. (Mot. to Intervene, Dkt. 132). For the reasons discussed below, Accucom's motion is granted, Plaintiff's complaint is dismissed for lack of jurisdiction, and the motion to intervene is terminated as moot[1].

---

[1] Plaintiff had previously filed a preemptive motion for leave to amend the complaint to substitute new named putative class representatives and dismiss her claims without prejudice (Dkt. 101). But after Accucom challenged Plaintiff's Article III standing, the Court denied the motion and directed the parties to complete jurisdictional discovery so that the matter could be considered on a full record. (Dkt. 121). As discussed at length at the April 29, 2024 hearing (*see* Hearing Tr., Dkt. 122), standing of the named plaintiff is a threshold question that must be resolved since Plaintiff's lack of standing means federal jurisdiction never attached and the case was moot when filed. *See Walters v. Edgar*, 163 F.3d 430, 432 (7th Cir. 1998). As explained *infra*, that is indeed the situation here.

1

**BACKGROUND**

Accucom runs infotracer.com, which is a website that sells reports on people. (Compl. ¶ 1). The website allows a visitor to conduct a search with a person of interest's first and last name, then returns results showing records responsive to that search. (*Id.* ¶¶ 3-5). Accucom relies on third-party information to obtain these records. (Def.'s SOF, ¶ 9, Dkt. 136).[2] When a visitor searches on the website, Accucom makes a request to third-party sources for responsive records, then generates a search page to display the responses from the third-party sources. (*Id.* ¶¶ 10-11). Accucom does not compile any information in a pre-existing database maintained or controlled by the company, it only receives information from the third parties. (*Id.* ¶ 12). Because this search is dynamic and based on the information available from outside sources, search results may be different each time a search is conducted. (*Id.* ¶¶ 13-14).

After the records are gathered from outside sources, Accucom compiles the information into a report and makes those reports available for purchase. (Compl. ¶¶ 5-11). However, before an individual decides whether to purchase a report, Accucom allows a free preview of the information inside. (*Id.* ¶ 5). The free preview includes the person of interest's name, age, current city and state of residence, relatives, and other identifying information. (*Id.*). The purpose behind these free previews is to entice a visitor to purchase Accucom's services. (*Id.* ¶¶ 6-8).

Plaintiff is an individual who lived in Chicago, Illinois until August 2021 when she moved to Minnesota. (Compl. ¶ 18; SOF ¶ 15). On January 8, 2021, Plaintiff responded to a solicitation on Facebook by her current counsel. (SOF ¶ 16). On February 24, 2021, her counsel ran a search

---

[2] Accucom submitted a statement of facts in support of its motion to dismiss (Dkt. 136) contemporaneously with the motion, which Plaintiff does not dispute. Where external facts call the court's jurisdiction into question, it is proper to "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009).

of her name on Accucom's website. (*Id.* ¶ 18). Plaintiff then "discovered [via her counsel] that Accucom uses her name, age, city of domicile, and the identity of her relatives in advertisements on the Accucom website to advertise and/or actually sell [Accucom]'s products and services." (Compl. ¶ 23). Prior to her counsel searching for her name on Accucom's website, Plaintiff had neither heard of nor visited infotracer.com. (SOF ¶ 19). Moreover, her counsel's search is also the first time Plaintiff's information appeared in any search results of infotracer.com. (*Id.* ¶¶ 20, 22-24). Indeed, all searches of Plaintiff's name on the website were from parties to this case or the agents of those parties. (*Id.*).

On March 2, 2021, Plaintiff brought this putative class action against Accucom alleging that Accucom's use of her name and likeness, and the putative class members she represents, violates the IRPA because Accucom uses this information to advertise and promote its products without written consent. (Compl. ¶¶ 36-41). Plaintiff seeks damages for retroactive violations of the IRPA and prospective injunctive relief requiring Accucom to cease using the name and likeness of Plaintiffs and the putative class members to advertise its products and services. (*Id.* ¶ 41).[3]

After three years of motion practice and completion of discovery, Accucom moves for dismissal of Plaintiff's complaint based on a factual challenge to jurisdiction. Plaintiff opposes Accucom's motion and instead asks to substitute new named plaintiffs whose standing is not disputed.

---

[3] On October 1, 2021, or after the complaint was filed, Accucom made changes so that Plaintiff no longer appears in the search results of its website. (SOF ¶¶ 26-27).

**DISCUSSION**

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).[4] The standard of review for a Rule 12(b)(1) motion to dismiss depends on whether the defendant raises a facial or factual challenge. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). Where, as here, the defendant contests the truth of the jurisdictional allegations—a factual challenge—the Court may look beyond the pleadings and view any competent proof submitted by the parties to determine if the plaintiff has established subject matter jurisdiction by a preponderance of the evidence. *See id.* at 173; *Apex*, 572 F.3d at 444-445; *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006). Accucom has brought such a factual challenge.

As the Supreme Court has explained, a jurisdictional challenge at the summary judgment stage borrows the evidentiary requirements and procedures from those under Rule 56; thus, "each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In response to a Rule 12(b)(1) motion that is supported by evidence, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Lujan*, 504 U.S. at 561. "While there may be facts in dispute, dismissal under Rule 12(b)(1) is warranted only if those facts are not outcome determinative." *Am. Homeland Title Agency, Inc. v. Robertson*, 348 F. Supp. 3d 852, 861 (S.D. Ind. 2018) (citing *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005)).

---

[4] Although Accucom has filed its answer and the parties have engaged in discovery, the Seventh Circuit instructs that a Rule 12(b)(1) motion is proper when the court's subject matter jurisdiction is disputed under these circumstances. *Mack v. Resurgent Cap. Servs., L.P.*, 70 F.4th 395, 403 (7th Cir. 2023) (reviewing case as an appeal from a dismissal under Rule 12(b)(1), despite the district court treating the motion challenging standing as one for summary judgment).

Plaintiff has not disputed any of the facts submitted by Accucom (*see* Pl.'s Opp'n, Dkt. 145), so the Court takes them as uncontroverted.

Accucom argues that: (1) Plaintiff lacks Article III standing because she has not shown a concrete injury-in-fact to support her retroactive IRPA claim; and (2) Plaintiff's request for injunctive relief is moot because she now lives in Minnesota and Accucom has removed her from its search results. Plaintiff counters that because Accucom held out her identity to be searched, she has established an injury sufficient to confer Article III standing. She further maintains that her request for injunctive relief is not moot because there is nothing stopping Accucom from reengaging in the same harmful conduct, and the relief relates to the publication of her information as an Illinois resident. The Court finds Plaintiff's arguments unavailing.

## **Standing**

The Constitution limits federal courts' jurisdiction to "cases" and "controversies," U.S. Const. art. III § 2, cl. 1, and "standing is an essential ingredient of subject-matter jurisdiction." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020). As the party invoking the Court's jurisdiction, Plaintiff bears the burden of demonstrating that she has standing. *Lujan*, 504 U.S. at 561; *Silha*, 807 F.3d at 173. To carry her burden, Plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). This injury "must actually exist." *Id.* at 340. In other words, Plaintiff must show that she has suffered or is at imminent risk of suffering an injury caused by Accucom and that the injury could likely be redressed by favorable judicial relief. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Not all injuries satisfy this requirement. Only injuries that are concrete, particularized, and actual or imminent qualify as injuries in fact. *Id.* at 423-424.

A concrete injury is one that is "real, and not abstract." *Id.* at 424. "Tangible harms such as monetary loss and physical damage ordinarily suffice." *Patterson v. Howe*, 96 F.4th 992, 996 (7th Cir. 2024). An intangible harm can also be concrete if it bears "a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Id.* (quoting *TransUnion*, 594 U.S. at 424) (quotes omitted). For example, reputational and privacy harms are sufficiently concrete because they have established common-law analogues. *TransUnion*, 594 U.S. at 425. The relationship between a harm made actionable under a statute and a common-law counterpart need not be exact—the resemblance must exist only "in kind, not degree." *Nabozny v. Optio Solutions LLC*, 84 F.4th 731, 736 (7th Cir. 2023).

"Intangible harms arising from statutory violations can satisfy the injury-in-fact requirement so long as they are sufficiently concrete." *Patterson*, 96 F.4th at 996. A legislature "may create civil liability for conduct that is not actionable under the common law, and consumer-protection statutes . . . are prime examples." *Id.* "For an injury in fact, a statutory violation must cause a plaintiff to change his behavior in a way that inflicts concrete harm on the plaintiff." *Id.* at 998.

In *TransUnion*, the Supreme Court laid out how lower courts must address standing based on an intangible harm made actionable by a statute. Courts must consider whether the harm "bears a close relationship to any harms traditionally recognized as providing a basis for lawsuits in American courts, including those harms specified by the Constitution itself, and must afford 'due respect to [the legislature]'s decision' to impose obligations on a defendant and to grant a private cause of action." *Patterson*, 96 F.4th at 996-997 (quoting *TransUnion*, 594 U.S. at 425). A legislature cannot "transform something that is not remotely harmful into something that is, but it may elevate to the status of legally cognizable injuries concrete, de facto injuries that were

6

previously inadequate in law." *Id.* at 997 (quoting *TransUnion*, 594 U.S. at 425-426) (quotes omitted). This respect for legislative action is "essential to the Constitution's separation of powers." *TransUnion*, 594 U.S.at 429. "Just as courts may not overstep their role by adjudicating non-justiciable cases, so too they should not overstep their role by refusing to allow remedies for injuries that [the legislature] reasonably deemed compensable." *Patterson*, 96 F.4th at 996.

It is well established in this district that "[t]he Right of Publicity Act . . . completely replaced the common-law tort of appropriation of likeness . . . ." *Hoffower v. Seamless Contacts Inc.*, 736 F. Supp. 3d 605, 612 (N.D. Ill. 2024) (collecting cases). This is further supported by the language of the IRPA, which provides that "[t]he rights and remedies provided for in this Act are meant to supplant those available under the common law." 765 ILCS 1075/60. However, even if the alleged harm bears a close relationship with harms traditionally recognized by American courts, *TransUnion* still requires the harm to be sufficiently concrete to confer Article III standing. *TransUnion*, 594 U.S. at 434 ("[T]he mere existence of . . . information in a database is insufficient to confer Article III standing.").

Plaintiff cites *Lukis v. Whitepages Inc.*, 549 F. Supp. 3d 798 (N.D. Ill. 2021), for the proposition that "IRPA claims like Plaintiff's meet each of Article III's requirements." (Pl.'s Opp'n, at 1502, Dkt. 145).[5] In that case, the defendant argued the plaintiffs did not suffer a concrete injury to establish standing to bring their IRPA claim. *Lukis*, 549 F. Supp. 3d at 802. After making a historical inquiry into the common-law roots of the IRPA, the court found that on its face "an IRPA violation inflicts a concrete injury-in-fact under Article III." *Id.* at 805. But *Lukis* involved a facial attack to standing, not a factual attack like Accucom argues here. In fact, all the cases cited

---

[5] Unless otherwise noted, page numbers in citations to the docket reference the "PageID #" in the CM/ECF header, not other page numbers in the header or footer of the document.

by Plaintiff to support her injury-in-fact argument address facial attacks to standing or do not directly address standing at all. *See id.* at 805 (finding standing on a facial attack); *Hoffower*, 736 F. Supp. 3d at 612 (following the "reasoning in *Lukis*," and rejecting a facial challenge to standing while granting summary judgment on the merits); *Fischer v. Instant Checkmate LLC*, 2022 WL 971479, at *10 (N.D. Ill. Mar. 31, 2022) (addressing plaintiffs' motion for class certification).

The Seventh Circuit has acknowledged the "critical difference" between facial and factual challenges to jurisdiction. *Apex*, 572 F.3d at 443. "Facial challenges require only that the court look to the complaint and see if the plaintiff has sufficiently *alleged* a basis of subject matter jurisdiction." *Id.* (emphasis in original). "In contrast, a factual challenge lies where the complaint is formally sufficient but the contention is that there is *in fact* no subject matter jurisdiction." *Id.* (emphasis in original and quotes omitted). When presented with a factual challenge, the Seventh Circuit, citing a Third Circuit decision with approval, explained how courts should proceed:

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Id.* at 444 (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

This Court has not found any post-*TransUnion* decisions that purport to analyze the IRPA pursuant to a *factual* challenge to standing. However, *Fry v. Ancestry.com Operations Inc.*, No. 3:22-CV-140 JD, 2023 WL 2631387 (N.D. Ind. Mar. 24, 2023) is instructive. In that case, Fry sued Ancestry.com for allegedly violating Indiana's right of publicity statute and his common law right of publicity. *Id.* at *1-2. Like Accucom's website, Ancestry.com used a public landing page that allowed visitors to search by name and location for any person. *Id.* at *1. After a preview of

8

the person, the website prompted visitors to sign up for a paid subscription plan and sends the visitor targeted promotions that contain the person of interest's name and likeness. *Id.* Fry was a person of interest on that site, but did not consent to such usage. *Id.* at *2.

Taking the allegations in the complaint as true, the *Fry* court found his injuries adequate at the pleading stage (*i.e.*, a facial challenge to standing), but also acknowledged that "Mr. Fry will continue to bear the burden of establishing standing throughout the life of this litigation." *Id.* at *5 (citing *Midwest Fence Corp. v. United States Dep't of Transportation*, 840 F.3d 932, 939 (7th Cir. 2016)). The court found it alarming that the record reflected only uses of Fry's likeness in Ancestry.com's advertising by his counsel, stating that "[i]f these constitute the only uses of Mr. Fry's likeness . . . , Mr. Fry would not have standing under his actual injury theory because his injury would be entirely self-inflicted." *Id.* Citing *TransUnion*, the *Fry* court stressed that the offending conduct "*has to have actually happened at least one time.*" *Id.* (emphasis in original) (citing *TransUnion*, 594 U.S. at 427) ("[a]n uninjured plaintiff who sues in those circumstances is, by definition, not seeking to remedy any harm to herself" and does not have standing). In short, the *Fry* court found the allegations were enough to overcome a facial challenge, but warned the plaintiff that he must "later produce evidence of the truthfulness of his allegations: that his likeness was used in advertisements to someone other than his attorney or their agents." *Id.*

The *Fry* court's forewarning certainly applies to Plaintiff's circumstances. "To state a claim for a violation of IRPA, the plaintiff must allege: (1) an appropriation of the plaintiff's identity, (2) without the plaintiff's written consent, and (3) for defendant's commercial purpose." *Huston v. Hearst Comms., Inc.*, 53 F.4th 1097, 1099 (7th Cir. 2022). A "commercial purpose" under IRPA, in relevant part, requires: "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; [or] (ii)

9

for purposes of advertising or promoting products, merchandise, goods, or services" 765 ILCS 1075/5.[6] In other words, the IRPA "contemplates a use or holding out of an individual's identity with the aim of effectuating a sale." *Huston*, 53 F.4th at 1099.

Based on the undisputed record, there is no evidence that Plaintiff's identity was displayed on Accucom's platform at any time other than when her attorney and agents of the parties searched her name in preparation for this litigation. Because this cannot be said to constitute a "commercial purpose" as contemplated under IRPA, it is not enough to find that Plaintiff suffered a concrete injury-in-fact. Put simply:

> This Court cannot endorse a reading of IRPA that permits a plaintiff to obtain relief based on her own attorney making a direct request for, and then obtaining, the plaintiff's identifying information. And allowing a plaintiff to bring an IRPA claim without the defendant having actually shown or displayed the plaintiff's identifying information would negate the statute's requirement that a violation consists of the defendant's handling of that information, specifically the "use" or "holding out" of it.

*Hoffower*, 736 F. Supp. 3d at 616. The mere presence of Plaintiff's information on the Accucom website causes no concrete injury if it is not accessed by a third party for Accucom's commercial purpose. *See TransUnion*, 594 U.S. at 434 ("A [defamatory] letter that is not sent does not harm anyone, no matter how insulting the letter is.").

Just as the fact that a credit file contains inaccurate information causes no concrete harm if it is not disclosed to a third party, *TransUnion* 594 U.S. at 434, a person's identity is not

---

[6] The Court notes that the Indiana right of publicity law analyzed in *Fry* is substantially the same as the IRPA. The Indiana law applies only to the appropriation of a person's identity or "personality" without consent and for a "commercial purpose." *See* Ind. Code § 32-36-1-8. The Indiana law goes on to define "commercial purpose" as "the use of an aspect of a personality's right of publicity . . . (1) [o]n or in connection with a product, merchandise, goods, services, or commercial activities[; or] (2) [f]or advertising or soliciting purchases of products, merchandise, goods, services, or for promoting commercial activities." Ind. Code § 32-36-1-2.

appropriated under the IRPA unless it is used for a commercial purpose.[7] Proof that the statute was facially violated is not enough to demonstrate an actionable injury. Plaintiff's injury is self-inflicted, not for Accucom's commercial purpose as the IRPA requires. Therefore, she has not established a sufficiently concrete injury for Article III standing.

Accordingly, Plaintiff's retrospective IRPA claim (count I) and corresponding request for damages is dismissed.

### Injunctive Relief

Plaintiff also seeks injunctive relief against Accucom based on the potential for future harm. The Supreme Court has recognized that "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion*, 594 U.S. at 435. But a plaintiff must "demonstrate standing separately for each form of relief sought." *Id.* The IRPA allows for injunctive relief "as may be appropriate under this Act." 765 ILCS 1075/50.

"Under Illinois law, 'a statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute.'" *Hernandez v. Omnitracs, LLC*, No. 1:22-CV-00109, 2024 WL 1376352, at *6 (N.D. Ill. Mar. 31, 2024) (quoting *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 127 (Ill. 2005)). Because "none of [the IRPA]'s express provisions indicates that the statute was intended to have extraterritorial effect . . . [the IRPA] does

---

[7] Similar to the Supreme Court's analysis in *TransUnion*, which compared the publication requirement for defamation to violations of the Fair Credit Reporting Act, the Court's finding here is consistent with harms traditionally recognized by Illinois courts via the common law misappropriation of likeness or right of publicity torts that the IRPA supplanted. *Berkos v. Nat'l Broad. Co.*, 161 Ill. App. 3d 476, 495 (1st Dist. 1987) ("It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness that the right of privacy is invaded."); *Brode v. Tax Mgmt.*, No. 88 C 10698, 1990 WL 25691, at *8 (N.D. Ill. Jan. 31, 1990) ("The right [of publicity] . . . is concerned only with commercial exploitation."); *Jackson v. MPI Home Video*, 694 F. Supp. 483, 492 (N.D. Ill. 1988) ("The plaintiff's claim to the right of publicity is . . . based upon the plaintiff's right to use his own name and likeness for his own benefit, and this right is violated when one, without leave, uses it for his benefit and not the plaintiff's.").

not apply extraterritorially." *Cf. Monroy v. Shutterfly, Inc.*, No. 16 C 10984, 2017 WL 4099846, at *5 (N.D. Ill. Sept. 15, 2017). However, to determine whether a statutory violation occurs in Illinois, Illinois courts apply the test provided in *Avery*. The *Avery* factors are primary concerned with whether "the legal dispute '[will] occur primarily and substantially' within Illinois," and considers: "the plaintiff's residence; the location of harm; communications between parties (where sent and where received); and where the defendant's policy is carried out." *Fischer*, 2022 WL 971479, at *10 (citing *Avery*, 835 N.E.2d at 853-854).

Here, Plaintiff lives in Minnesota. Accucom is a Delaware corporation with its principal place of business in Boston, Massachusetts. Though Accucom's website can be accessed in Illinois, that is not enough under *Avery*. *See Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 397 (7th Cir. 2009) (applying *Avery* and determining that defendant maintaining a "home office" in Illinois is not enough to confer standing under Illinois consumer fraud law). Any future dispute between Accucom and Plaintiff cannot be said to primarily and substantially occur within Illinois to allow for extraterritorial application of the IPRA. Plaintiff therefore does not have standing to seek forward-looking injunctive relief as an Illinois resident because she now resides in Minnesota and has not proffered any evidence that she plans to return to Illinois.

Plaintiff's request for injunctive relief is therefore not sufficiently imminent and must be dismissed.[8]

## Motion to Intervene

With Plaintiff's claims now dismissed for lack of jurisdiction, she urges the Court to substitute new named plaintiffs in the Complaint so that this case may continue. While that may

---

[8] Because the Court finds that it does not have subject matter jurisdiction to hear Plaintiff's claims, it need not address other substantive arguments presented by the parties in their briefing.

be the most practical course of action, *Walters* forecloses that option. It is only where a named plaintiff is deprived of standing after the lawsuit has been filed *and* the class has been certified *and* at least one of these unnamed class members has standing, that the proper remedy would be substitution of new parties instead of dismissal of the complaint. *Walters*, 163 F.3d at 432. Even if the proposed intervenors have standing to proceed, that is not enough. Because the Court never attained federal jurisdiction over any of Plaintiff's claims in her Complaint, no case or controversy existed then or now for new named plaintiffs to step into and litigate. Accordingly, the proposed intervenor's motion is moot.

## CONCLUSION

For all the foregoing reasons, Defendant's motion to dismiss is granted, Plaintiff's complaint is dismissed without prejudice for lack of jurisdiction, and the motion to intervene is terminated as moot.

**DATED**: October 2, 2025        **ENTERED**:

LaShonda A. Hunt
United States District Judge